SMITH v PHYSICIANS HEALTH PLAN, INC

Docket No. 95960. Argued November 3, 1993 (Calendar No. 14). Decided March 29, 1994.

John W. Smith, for himself, and as next friend of Michelle Smith, his minor daughter, brought an action in the Ingham Circuit Court against Physicians Health Plan, Inc., the provider of group health insurance through his employer, for expenses incurred by Michelle following an automobile accident. The plaintiff had purchased no-fault insurance policies that provided for uncoordinated benefits, while the health insurance policy contained a coordination of benefits clause. After the no-fault carrier paid the medical expenses, the plaintiff sought to recover their cash value from the defendant. PHP rejected the claim. The court, Michael G. Harrison, J., held that where no-fault automobile coverage is uncoordinated, the health insurer must make a cash payment to the insured, reasoning that otherwise the purchase of uncoordinated no-fault coverage would be meaningless. The Court of Appeals, MARILYN J. KELLY, P.J., and McDONALD and G. S. ALLEN, JJ., affirmed, holding that unless a health insurer can demonstrate that it lowered its premium to reflect the insured's uncoordinated no-fault automobile insurance, it cannot rely on a coordination of benefits clause included in its policy (Docket No. 129064). The defendant appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice CAVANAGH, Justices BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court *held:*

A no-fault insured who has elected uncoordinated benefits under a no-fault policy is not entitled to receive duplicate payment for medical expense from a health insurer whose policy contains a coordination of benefits clause.

1. MCL 500.3109a; MSA 24.13109(1) was intended to afford insureds who already had health insurance an opportunity to

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340-368; Insurance § 1788.
Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

.

reduce no-fault premiums by coordinating benefits. It was not intended to guarantee double recovery regardless of the provisions of the health insurance contract. Only where both the no-fault and the health insurance policies are uncoordinated is multiple recovery by the insured possible. Paying extra money to a no-fault carrier for an uncoordinated policy does not transform an insured's *other insurance*. Nothing in the statutory scheme enables the insured unilaterally to render otherwise coordinated health insurance coverage uncoordinated.

2. In this case, the insured contracted with the no-fault carrier for uncoordinated coverage for an extra premium, making the no-fault coverage primary. The health insurer, however, provided group health care coverage for a premium based on the inclusion of coordinated benefits. In each instance, the purchaser got what was paid for. The burden is on the consumer to tailor no-fault coverage to health coverage.

Reversed and remanded.

Justice LEVIN, dissenting, stated that the Legislature, in providing in § 3109a of the no-fault automobile liability act that owners of automobiles could choose to purchase no-fault insurance with or without coordination of the medical expense component of no-fault benefits with other health coverage, intended that there be a so-called "double recovery" where the insured elected not to coordinate. The effort of the defendant health provider to relieve itself of the burden of the medical costs arising out of the automobile accident that gave rise to this litigation is violative of § 3109a.

When enacted, the no-fault act did not provide for coordination of benefits, and double recovery was often obtained. 1974 PA 72 amended the no-fault act, providing automobile owners the opportunity to coordinate benefits at a reduced premium. Coordination, however, was not and is not mandatory. An owner who does not choose to coordinate is in the same position as before the 1974 amendment: in the event of an accident there would be double recovery of medical expense—from both the no-fault insurer and the health care insurer.

The lodestar in construing § 3109a should be legislative intent, not freedom of contract. In enacting § 3109a, the Legislature provided the automobile owner the option to obtain double recovery; it was not the health care or automobile insurers' choices. Nor is it the choice of the Supreme Court. In substituting its view of public policy for that of the Legislature, the Court exceeds its authority, and provides a windfall for health insurers and providers.

In *Federal Kemper Ins Co v Health Ins Administration, Inc,* 424 Mich 537 (1986), the Court had no difficulty finding legisla-

tive intent to prohibit health insurers from including coordination of benefits clauses where automobile owners had elected to coordinate. But the majority concludes, where an automobile owner elected not to coordinate, that there is no legislative intent, thereby freeing the majority, in the name of freedom of contract, to stand on its head the choice provided automobile owners by § 3109a to coordinate or not to coordinate the medical expense component of no-fault benefits with other health coverage.

The automobile owner/insured in *Federal Kemper* also contracted for coordinated coverage from his health insurer. He did not, however, receive coordinated coverage from his health insurer. He received, contrary to his contract with the health insurer, uncoordinated coverage.

The law of economics required a decision in *Federal Kemper* in favor of no-fault insurers because a no-fault insurer could not provide automobile no-fault insurance coordinated with other health insurance at the legislatively contemplated reduced premium unless there was a reduction in its financial exposure—a reduction that would be defeated if the coordination-of-benefits clause the automobile owner/insured contracted for with his health insurer were valid.

The same law of economics should be observed by the Supreme Court in the analysis and resolution of the issue presented in this case. An automobile owner/insured who elects not to coordinate, does so to obtain the legislatively contemplated overlapping coverage, with the consequent double recovery. Just as the law of economics requires that there be a reduction in an automobile insurer's exposure in exchange for a reduced premium, so, too, it requires an increase in coverage to an automobile owner/insured in exchange for a nonreduced premium—double coverage for double premium.

196 Mich App 617; 493 NW2d 480 (1992) reversed.

INSURANCE — NO-FAULT — HEALTH INSURANCE — COORDINATION OF BENEFITS — DUPLICATE RECOVERY.

A no-fault insured who has elected uncoordinated benefits under a no-fault policy is not entitled to receive duplicate payment for medical expense from a health insurer whose policy contains a coordination of benefits clause (MCL 500.3109a; MSA 24.13109[1]).

*Sinas, Dramis, Brake, Boughton & McIntyre, P.C.* (by *George T. Sinas* and *David R. Brake*), for the plaintiff.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *David D. Waddell* and *Kathleen E. Kane*), for the defendant.

Amicus Curiae:

*Ronald E. McNulty* for American Community Mutual Insurance Company.

BRICKLEY, J. This case presents the question whether MCL 500.3109a; MSA 24.13109(1)[1] requires health insurers whose policies contain coordination of benefits clauses to reimburse an insured for medical expenses paid by an automobile no-fault insurer under a policy in which the insured elected uncoordinated medical coverage. We find no intent by the Legislature when it mandated that no-fault carriers make available coordinated coverage at a reduced cost to correspondingly prohibit health insurers from including coordination of benefits clauses in the coverage provided by the health insurance policy. We therefore hold, as a matter of contract interpretation, that a no-fault insured is not entitled to receive duplicate payment for medical expense where the insured had elected uncoordinated benefits under his no-fault policy, but his health insurance policy contained a coordination of benefits clause.[2]

---

[1] MCL 500.3109a; MSA 24.13109(1) provides in pertinent part:

An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions, reasonably related to other health and accident coverage on the insured.

[2] In not finding a legislative intention to prohibit health insurers from including clauses to coordinate benefits with *uncoordinated* no-fault automobile insurance, it is unnecessary to determine the following: 1) whether such a state legislative policy is preempted by the federal Employee Retirement Insurance Security Act, 29 USC 1001 *et seq.,* and the federal Health Maintenance Organization Act, 42 USC

I

Plaintiff's minor daughter, Michelle Smith, was seriously injured on January 31, 1987, when her sixteen-year-old sister lost control of the automobile she was operating. No-fault automobile insurance policies, issued by State Farm Mutual Automobile Insurance Company, covered the vehicle and the driver. Both policies were uncoordinated, meaning the no-fault automobile insurance would pay benefits regardless of whatever other insurance the insured may have. Plaintiff paid a higher premium for the uncoordinated policies than he would have paid had he selected coordinated no-fault automobile insurance.

At the time of the accident, John Smith had health insurance issued by Physicians Health Plan, a health maintenance organization. This group health insurance was provided by Mr. Smith's employer, Meijer, Inc. Michelle was entitled to benefits under the PHP coverage by virtue of her father's employment. The certificate of coverage for the health care plan contained a coordination of benefits clause.[3]

For the most part, Michelle was treated by

300e, *et seq.,* as was recently addressed by this Court in *Auto Club Ins Ass'n v Frederick & Herrud, Inc,* 443 Mich 358; 505 NW2d 820 (1993); 2) whether the Physician's Health Plan coverage qualifies as an ERISA plan; 3) whether defendant Physician's Health Plan failed to preserve the preemption issue by raising it for the first time at the motion for rehearing in the Court of Appeals; 4) whether PHP's certificate of coverage provides by its terms that the minimum requirements of the statutes of the jurisdiction in which it is delivered will be given effect, thus contracting to preclude preemption; 5) whether the trial court and the Court of Appeals premised their decision on an erroneous factual assumption regarding PHP's method of determining premiums; and 6) whether requiring an HMO to make a cash payment to an insured would violate 42 USC 300e-9(d) and MCL 333.21077; MSA 14.15(21077).

[3]  If any Covered Person is eligible for services or benefits under two or more Plans, the coverage under those Plans will be coordinated so that up to, but no more than, 100% of any

hospitals and doctors who participated with the Physicians Health Plan. Those hospitals and physicians were reimbursed by the no-fault insurance carrier.[4] Mr. Smith sought payment from PHP in the same amount. Relying on the coordination of benefits clause, PHP denied the claim.

II

Following PHP's rejection of plaintiff's claim, plaintiff brought suit against the plan for the cash value of the medical expenses incurred by Michelle. The trial court granted plaintiff partial summary disposition pursuant to MCR 2.116(C)(10), no genuine issue of material fact, regarding the issue of liability. The trial court held that where the no-fault automobile coverage was uncoordinated, the health insurer was required to make a cash pay-

Eligible Expenses will be paid for, or provided by, all such Plans combined. Primary Responsibility for providing these services or benefits will be determined in the following order:

(1) Any Plan providing benefits or services under:

(a) Any Workers' Compensation Act or similar law;

(b) Any No-Fault Automobile Insurance Act or similar laws. Benefits are not provided for services for treatment of any automobile-related injury to the extent to which the member is covered under any automobile-related policy.

[4] The certificate of coverage provided:

PHP shall be entitled to:

(1) Determine whether and to what extent a Covered Person has indemnity or other coverage for the Health Services covered under the Contract;

(2) Establish in accordance with (1) through (6) above priorities for determining Primary Responsibility, among the Plans obligated to provide health care services or indemnity benefits;

(3) Release to or obtain from any other Plan any information needed to implement this provision; and

(4) Recover the value of Health Services rendered to the Covered Person under the Contract to the extent that such Health Services are actually provided or indemnified by any other Plan.

ment to the insured. Otherwise, the court reasoned, the purchase of uncoordinated no-fault coverage would be meaningless. A trial was held on the issue of damages, and the plaintiff was awarded $155,897.72.

The Court of Appeals affirmed the decision of the trial court. It held that unless a health insurer can demonstrate it lowered the premium charged to reflect the insured's uncoordinated no-fault automobile insurance, then the health insurer cannot rely on the coordination of benefits clause included in the policy. 196 Mich App 617; 493 NW2d 480 (1992). We granted leave to appeal. 443 Mich 869 (1993).

III

The Court of Appeals decision is premised on an incorrect interpretation of the legislative purpose in enacting MCL 500.3109a; MSA 24.13109(1). The legislative intent was to provide individuals with an opportunity to reduce premiums if they already had health insurance that covered automobile accidents. The purpose was not to provide a guarantee of double recovery regardless of whatever provisions might be contained in other insurance contracts.

Ascertaining the collective intent motivating the Legislature when a statute is enacted is by its very nature inexact. We have noted on past occasions that § 3109a was written to contain insurance and health care costs and to eliminate duplicate recovery. *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537, 551; 383 NW2d 590 (1986), overruled in part *Auto Club Ins Ass'n v Frederick & Herrud, Inc,* 443 Mich 358; 505 NW2d 820 (1993); *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173, 206; 301 NW2d 775

(1981), overruled on other grounds *Jarosz v Detroit Automobile Inter-Ins Exchange,* 418 Mich 565; 345 NW2d 563 (1984).

The Court of Appeals extends the reach of § 3109a beyond a reasonable interpretation of the purposes of the Legislature. The statute expressly regulates the availability of coordinated no-fault coverage. Such coverage must be made available at a reduced rate to individuals who have other health insurance that covers automobile accidents. The statute explicitly controls no-fault insurance. With the exception of our limited holding in *Federal Kemper, supra,* it is a misconstruction of the statute to sweep regulation of "other health and accident insurance" that the insured may have into the no-fault act.[5]

---

[5] Although we agree that the factual situation in *Albright v Butterworth HMO,* 196 Mich App 283; 492 NW2d 457 (1992), is virtually indistinguishable from that presently before us, we reject defendant's contention that the Court of Appeals should have been bound by *Albright* when deciding this case.

In *Albright,* the plaintiffs were attempting to recover duplicate recovery for medical expenses where there was uncoordinated no-fault automobile insurance and coordinated health insurance which attempted to coordinate with the no-fault coverage. Unlike the present case, however, the plaintiffs contended that the Coordination of Benefits Act, MCL 550.251 *et seq.;* MSA 24.13671 *et seq.,* rather than the no-fault act, mandated duplicate recovery.

MCL 550.253(2); MSA 24.13673(2) provides:

> Any such policy or certificate which contains a coordination of benefits provision shall provide that benefits under the policy or certificate shall not be reduced or otherwise limited because of the existence of another nongroup contract which is issued as a hospital indemnity, surgical indemnity, specified disease, or other policy of disability insurance as defined in section 3400 of the insurance code of 1956, Act No. 218 of the Public Acts of 1956, being section 500.3400 of the Michigan Compiled Laws.

The Court of Appeals panel in *Albright* held that an HMO is authorized to include coordination of benefits clauses relating to no-fault automobile insurance pursuant to MCL 500.3610a; MSA 24.13610(1), and that such a clause is not invalid under the Coordination of Benefits Act.

MCL 500.3610a; MSA 24.13610(1) provides:

A

At the time it was originally enacted, there was no provision for coordinated coverage in the no-fault act. An individual with health insurance from another source that covered injuries caused by automobile accidents had to buy the same uncoordinated no-fault policy and pay the same premium as the individual with no other insurance. The aim of the no-fault act was to make minimum insurance mandatory. Section 3109a amended the act to provide a mechanism that offered lower premiums to those individuals who were already covered for medical expenses arising out of automobile accidents.

The legislative history of § 3109a was explored in *Federal Kemper, supra,* pp 546-549. In addition to considering a report on HB 5724 (enacted as § 3109a), which was prepared by the Analysis Section of the House Insurance Committee, the Court relied on a letter to Governor William G. Milliken from Daniel J. Demlow, the Commissioner of Insurance, that urged support for the bill, stating individuals would have the ability to select deductibles on the basis of their existing health and

(1) A group disability insurance policy may contain provisions for the coordination of benefits otherwise payable under the policy with benefits payable for the same loss under other group insurance; automobile medical payments insurance; or coverage provided on a group basis by hospital, medical, or dental service organizations, by union welfare plans, or employee or employer benefit organizations.

(2) If a group disability insurance policy contains a coordination of benefits provision, the benefits shall be payable pursuant to the coordination of benefits act.

The *Albright* decision did not address whether MCL 500.3109a; MSA 24.13109(1) prohibits the coordination of benefits clause contained in the health insurers certificate of coverage, therefore it cannot be said to be binding precedent on the Court of Appeals panel in this case pursuant to Administrative Order No. 1990-6.

accident insurance if the new law were adopted. *Id.,* p 548.

The option of choosing between uncoordinated or coordinated no-fault automobile insurance does not exist for an individual who does not have underlying health or accident insurance that applies to automobiles. That individual must pay the higher premium for uncoordinated no-fault insurance. Therefore, the individual who is unemployed or does not have employment that provides health insurance must purchase uncoordinated no-fault insurance. Coordination of no-fault benefits, with its concomitant reduction in premiums, is only available to an insured who has health insurance in place.

While this is not the first case to require an interpretation of the effect of § 3109a on health insurance, it is the first opportunity this Court has had to determine the outcome when a no-fault insurance policy is uncoordinated and a health plan is coordinated.

It is when both the no-fault automobile insurance and the health insurance are uncoordinated policies that multiple recovery is possible for the insured. *Haefele v Meijer, Inc,* 165 Mich App 485; 418 NW2d 900 (1987), remanded on different issues 431 Mich 853; 425 NW2d 691 (1988).

In the situation where health insurance is uncoordinated and the insured has elected to coordinate the no-fault insurance, the Court of Appeals has held that health insurance is primary and there cannot be duplicate recovery. *Wiltzius v Prudential Property & Casualty Co,* 139 Mich App 306; 361 NW2d 797 (1984). This is a reasonable result. That result is consistent with the scheme the Legislature set forth in making coordinated no-fault coverage available. The insured receives the coverage the premiums were based upon.

Another possible combination of coverage occurs when both the health insurance and the no-fault policies purport to coordinate coverage. It is likely that the majority of consumers with other health insurance find themselves in this category. In *Federal Kemper Ins Co, Inc, supra,* we held that when an insured opts to coordinate no-fault coverage with health insurance pursuant to MCL 500.3109a; MSA 24.13109(1), the health insurer is primarily liable for the payment of medical expenses.

In deciding *Federal Kemper,* we found implicit in § 3109a a legislative intent to hold health insurers primarily liable despite coordinated benefits clauses when the insured has selected coordinated no-fault insurance. A contrary holding would have nullified the legislative option of having no-fault available at a reduced rate. Health insurers would have been able to unilaterally shift the risk of medical expenses as a result of automobile accidents to the no-fault system even though the insured elected coordinated coverage. Rates for coordinated coverage would have been identical to uncoordinated rates. Because the intent of the Legislature was to provide a way to reduce premiums for those individuals who already had medical coverage, the coordination of benefits clause in the no-fault insurance policy is given effect.

B

Unlike *Federal Kemper, supra,* the issue currently before this Court is whether a coordinated health insurance policy requires the insurer to pay the insured the value of medical expenses that have been paid under the uncoordinated no-fault policy. Enforcement of both insurance contracts as written presents no conflict with the dual purposes

of § 3109a. Enforcing the policies as written elimi-
nates duplicate coverage and reduces health insur-
ance and medical costs.

Under the no-fault act, the consumer has the
choice whether to coordinate coverage on the no-
fault side of his insurance. There is not a corre-
sponding guarantee that the selection of an un-
coordinated no-fault insurance policy will dictate
the terms of whatever other insurance one might
have. The purposes of the act would not be fur-
thered by such a rule. The act closely regulates no-
fault insurance. The statute is neutral with regard
to the availability and regulation of all other types
of insurance. If the Legislature had desired to
mandate the availability of uncoordinated insur-
ance from group health insurance plans, such a
prohibition would be reasonably found in the Coor-
dination of Benefits Act, MCL 550.251 *et seq.*; MSA
24.13671 *et seq.*[6] Section 3109a does not substan-
tively dictate the terms of health care coverage
when the consumer has uncoordinated no-fault
coverage.

Plaintiff contends that without a nullification of
the coordination of benefits clause, he will not be
allowed to receive the insurance coverage he con-
tracted for.[7] The flaw in that argument is that
there was no contracting between the employee,
the employer, and the health care provider for
uncoordinated coverage. The contract was with the
no-fault carrier for uncoordinated coverage, mean-
ing the no-fault carrier agreed to be primary in

---

[6] On the contrary, the Legislature has expressly provided that
health care corporations may issue certificates which coordinate
benefits. MCL 550.1401(5); MSA 24.660(401)(5).

[7] Plaintiff presented in the trial court evidence of premium rates
obtained from three different insurance companies. Although irrele-
vant to our analysis, we note that the difference in annual premiums
between the less expensive coordinated coverage and uncoordinated
coverage averaged approximately $35.

the event of a claim. The contract between the no-fault carrier and the insured cannot be said to bind PHP and alter the terms of the agreement it made with Meijer, Inc., to provide health insurance to its employees.

*Federal Kemper* is distinguishable in that it resolved a conflict between competing coordinated benefit provisions of no-fault automobile insurance policies and health insurance policies.[8] In a conflict of coordination clauses between the no-fault carrier and the health insurance carrier, in which each has included a coordination clause, it is reasonable for the group health care provider to be primarily liable. This is because the no-fault carrier complied with § 3109a and received a reduced premium in exchange for the coordination of benefits clause. There is no doubt that the Legislature intended § 3109a to give the option of coordinating to the consumer. That option would be rendered meaningless if health care providers are allowed to opt out when the no-fault coverage is coordinated.[9]

In deciding this case, the Court of Appeals reasoned that giving effect to the health insurers coordination clause contravenes § 3109a. A prior Court of Appeals panel in *Gibbard v Auto-Owners Ins Co,* 179 Mich App 54; 445 NW2d 182 (1989),

---

[8] The Court in *Federal Kemper* cautioned that the ruling addressed the situation in which only the no-fault policy was coordinated:

Our decision today is made in the factual context in which the no-fault insured chose coordinated coverage and the no-fault insurer, accordingly, charged a lower premium rate. We express no view as to what the result would be when the insured does not so elect and the no-fault premium is not correspondingly reduced. We note, however, that at oral argument, plaintiff's counsel admitted that in that situation the no-fault insurer would not be secondary, nor entitled to reimbursement from the health insurer. [424 Mich 552, n 10.]

[9] That option is not rendered meaningless when the no-fault coverage is uncoordinated.

refused duplicate recovery under facts almost identical to those presented here. In *Gibbard,* the Court of Appeals enforced the coordination of benefits clause included in a health insurance policy where the insured carried uncoordinated no-fault automobile insurance. The Court presumed that the premiums charged for the health insurance policy would have been adjusted downward to reflect the inclusion of the coordination of benefits clause. With presumably smaller premiums, the cost of insurance is contained and duplicate recovery is eliminated. *Gibbard, supra,* p 57. In awarding duplicate benefits to the plaintiff in this case, the Court of Appeals was not willing to presume a downward adjustment of premiums.[10]

The analysis of the Court of Appeals falters in that it misapprehends the Legislature's intent. Section 3109a does not require a health insurer to demonstrate a premium rate reduction to validate a coordination of benefits clause in the certificate of coverage. Section 3109a does not apply when the no-fault coverage is uncoordinated.

*Federal Kemper, supra,* gave effect to the coordination clause in a no-fault insurance policy because the availability of coordinated no-fault insurance was the true option granted in § 3109a. *Federal Kemper* does not purport to transform all coordination of benefits clauses in health insurance contracts into uncoordinated policies. Section 3109a controls the treatment of the no-fault insurance, not the status of health insurance. The

---

[10] Discovery established that defendant did not make any specific inquiry into the status of the no-fault automobile insurance coverage for individual employees and then set rates accordingly with regard to each individual. However, there was testimony by Glen Meinecke, manager of provider reimbursement with PHP, that the capitation rates used by PHP were based on actual claims made during the prior year. The presence of the coordination clause resulted in less actual expense and necessarily reduced annual premiums to be charged in the next year.

purchase of uncoordinated no-fault insurance that could provide a double recovery is not the "true option" granted in § 3109a.[11]

While the rationale for today's holding is a finding of neutrality expressed by the Legislature with regard to the availability of uncoordinated health insurance when no-fault is uncoordinated, we note that there are strong policy reasons to discourage duplicate coverage. There is a growing concern for the availability of insurance at affordable rates. The cost of claims inevitably affects the premiums charged. Of equal concern is cost-effective health care. Health care decisions should be based on health care needs and not influenced by what the matching cash grant might be.

There is no current state or federal law that imposes a mandatory duty on anyone, including employers, to provide comprehensive health and accident coverage. Section 3109a does not prevent an employer from discontinuing benefits. The statute does not prevent an employer from reducing health benefits from uncoordinated to coordinated.[12]

---

[11] Today's decision is consistent with recent legislation eliminating duplicative benefits. 1993 PA 143 (HB 4156, effective 1994):

Regardless of the number of motor vehicles insured or insurers providing security in accordance with this chapter, or the provisions of any other law providing for direct benefits without regard to fault for motor or any other vehicle accidents, a person shall not recover duplicate benefits for the same expenses or losses incurred under this section. [MCL 500.3107(6); MSA 24.13107(6).]

[12] Relying on *Transamerica Ins Co of North America v Peerless Industries,* 698 F Supp 1350 (WD Mich, 1988), exclusions written into health insurance polices that deny coverage for all automobile accident related claims have been upheld by the Court of Appeals. *Wolverine Mutual Ins Co v Rospatch Corp Employee Benefit Plan,* 195 Mich App 302; 489 NW2d 204 (1992); *Transamerica Ins Co of America v IBA Health & Life Assurance Co,* 190 Mich App 190; 475 NW2d 431 (1991); *Auto-Owners Ins Co v Autodie Corp Employee Benefit Plan,* 185 Mich App 472; 463 NW2d 149 (1990).

Plaintiff is correct in his statement that the effect of not selecting coordinated no-fault coverage was that he subsidized his health plan. The fact that plaintiff purchased uncoordinated no-fault insurance did not, however, provide a windfall for PHP. (There may have been at least a theoretical windfall to other Meijer employees who had coordinated no-fault and were able to indirectly share in the savings available for distribution to all employees as a result of plaintiff's offset claim.) The fact that State Farm was responsible for paying Michelle Smith's medical expenses arising out of the automobile accident was similar to other variables in the cost of insuring the plaintiff such as whether he was a cigarette smoker or exercised regularly. Group health insurers do not make inquiry into these matters because the nature of group health insurance is pooled risk. It would not be characterized as an unjust windfall if one employee disliked doctors and refused to seek any medical care in a given year, thus reducing the actual expense of providing health care to the entire group, which in turn reduced the next year's premium.

Whether or not group health care insurers are unilaterally inserting coordination clauses in their coverage without any corresponding reduction in premium is a matter of contract between the concerned parties.

IV

Having decided that there is nothing explicit or implicit in § 3109a to prevent enforcement of the coordination clause in the health care policy, resolution of this case is a matter of simple contract interpretation. There is nothing in the statutory

scheme to enable the plaintiff to unilaterally un-coordinate his health insurance.[13]

In *Tousignant v Allstate Ins Co,* 444 Mich 301; 506 NW2d 844 (1993), this Court recognized the importance of freedom of choice of the contracting parties. The option of coordinating no-fault and health insurance coverage allows individuals to tailor their insurance coverage to their own special needs.

There are valid reasons why an individual with health insurance provided by an HMO plan might want to pay an extra premium to ensure that the no-fault premium is primary. Under most HMO coverage, the ability to seek treatment outside the service area is limited. Purchasers who elect un-coordinated no-fault may have a greater range of choice and control over who their treating physician will be, what type of treatment is possible, and where such treatment can be obtained.

The plaintiff's claim is for breach of contract. Insurance policies will be treated like other contracts. *Group Ins Co of Mich v Czopek,* 440 Mich 590; 489 NW2d 444 (1992). PHP's certificate of coverage is clear and unambiguous on its face. It can be given its plain meaning without any conflict with the no-fault contract. We will not create ambiguity where none exists. *Edgar's Warehouse, Inc v United States Fidelity & Guaranty Co,* 375

---

[13] In response to Justice LEVIN's dissent, *post,* pp 772-773, in which it is asserted that the majority has not provided a reason that an insured would purchase uncoordinated no-fault insurance other than double recovery, we observe that even if double recovery is the aim of the insured, it is not the responsibility of the health insurer to provide the benefit the insured seeks from the no-fault carrier. While it may be obvious that the insured wanted double recovery, the fact remains that he only contracted with one of the two necessary parties. He contracted for uncoordinated benefits from his no-fault insurer, which he received, and for coordinated coverage from his health insurer, which he received. That the insured did not get more than his bargain is not a problem to be rectified by either the health insurer or this Court.

Mich 598, 602; 134 NW2d 746 (1965). Absent a conflict with § 3109a, we must enforce the PHP contract as written. *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355, 361-362; 314 NW2d 440 (1982). We cannot hold PHP liable for a risk it did not assume. *Illinois Employers Ins of Wausau v Dragovich,* 139 Mich App 502, 507-508; 362 NW2d 767 (1984); *Kaczmarck v La Perriere,* 337 Mich 500; 60 NW2d 327 (1953).

There were two actuarial determinations based on the terms of each contract to determine the premium or other consideration. The plaintiff received what was paid for under each contract. Plaintiff paid an extra premium in order to make the no-fault coverage primary. State Farm has fully performed. Meijer, Inc., the plaintiff's employer, paid for health care coverage with coordinated benefits. Meijer got what it paid for. Paying extra money to a no-fault carrier for an uncoordinated policy does not transform plaintiff's other insurance contract. The health insurance premium was based on the inclusion of a coordinated benefits clause.

v

Our decision today places the burden on the consumer to tailor one's no-fault coverage to the particular health insurance one happens to have. If the health insurance contains a coordinated benefits clause, the insured may be well advised to select the option of coordinated no-fault insurance at a lower premium.

Therefore, the decision of the Court of Appeals is reversed, and the trial court's summary judgment for the plaintiff is vacated. The matter is remanded to the trial court for entry of summary disposition for the defendant on the issue whether

plaintiff is entitled to payment in the amount of the medical expenses incurred by Michelle Smith.

CAVANAGH, C.J., and BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with BRICKLEY, J.

LEVIN, J. (*dissenting*). The question is whether the Legislature, in providing, in § 3109a[1] of the no-fault automobile liability act, owners of automobiles with the choice of purchasing no-fault insurance with coordination or without coordination of the medical expense component of no-fault benefits with other health coverage, intended that injured persons, who are covered by a no-fault policy the owner opted, for a higher premium, *not* to coordinate, would recover medical expense both from a no-fault insurer and any health insurer. I would hold that the Legislature intended that, in such a case, there be a so-called "double recovery," and that the effort of Physicians Health Plan, Inc., the defendant health provider, to relieve itself of the burden of the medical costs arising out of the automobile accident that gave rise to this litigation is violative of § 3109a.

When the no-fault automobile liability act was enacted in 1972,[2] there was no provision for coordination of the medical expense component of no-fault benefits with other health care insurance or coverage.[3] As a result, a person injured in an automobile accident often obtained a double recovery—a recovery of medical expense from both the no-fault insurer and the insurer under any health

[1] MCL 500.3109a; MSA 24.13109(1).

[2] 1972 PA 294, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*

[3] See *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 550; 273 NW2d 829 (1979).

See also analysis of HB 5724 prepared by the House Insurance Committee referred to and quoted in ns 5, 14 and 26.

care insurance purchased by or for the injured person.[4]

The no-fault act was amended in 1974 to provide owners of automobiles with the *"opportunity"*[5] to coordinate the medical expense component of a no-fault policy with other health coverage. The amendment, adding § 3109a to the Insurance Code, requires a no-fault insurer to *"offer,"* at a reduced premium, no-fault automobile insurance coordinated with other health coverage.[6] The Insurance

---

[4] *Id.*

"The bill [that provided for the addition of § 3109a to the Insurance Code, see n 6] would make it *possible* to eliminate the current situation in which persons insured under accident and health policies which include medical expense and loss of wages benefits may collect benefits from such coverage and from their no-fault personal protection benefits. This double recovery is contrary to public policy in that it is wasteful and can result in an insured receiving more income when recuperating than when working.

"The bill gives each consumer the *chance* to select or reject deductibles based on his existing non-automotive health and accident coverage. Currently, insurers writing approximately 90% of Michigan's no-fault coverage do not allow the consumer to make such a choice." [Letter dated February 26, 1974, from Daniel J. Demlow, Commissioner of Insurance, to Governor William G. Milliken, quoted in *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173, 195; 301 NW2d 775 (1981). Emphasis added.]

[5] "The bill [that provided for the addition of § 3109a to the Insurance Code, see n 6] would save millions of dollars for Michigan drivers and would offer them an *opportunity* to eliminate their duplicate, overlapping insurance coverage since automobile insurers would be required to offer deductibles of exclusions which wrap-around a policy-holder's health and accident coverage. No-fault insurers would *offer* these deductions at reduced premiums, and State insurance officials estimate the 5 to 6 million Michigan drivers could save $100 million annually." [Analysis of HB 5724 prepared by the House Insurance Committee (February 27, 1974), quoting from *LeBlanc v State Farm Mutual Automobile Ins Co,* n 4 *supra,* p 196. Emphasis added.]

[6] Section 3109a was added to the no-fault act (1972 PA 294) by 1974 PA 72, and provides:

Commissioner and the Legislature anticipated, correctly, that most automobile owners would avail themselves of the opportunity to reduce the cost of automobile insurance in exchange for relinquishing the *opportunity* for a double recovery.[7]

An insurer providing personal protection insurance benefits shall *offer*, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1). Emphasis added.]

Nineteen years later, this section was amended by 1993 PA 143. The language enacted in 1974 is now subsection (1) of § 3109a; there is no substantive change: The second sentence was changed to add the word "are" in place of the first "shall" in that sentence and to eliminate the second "shall" in that sentence. The following new subsections (2) and (3) were added:

(2) Health and accident coverage that does not become effective until after the date of the injury is secondary to personal protection insurance benefits for all services related to the injury.

(3) Coverage under title XVIII of the social security act, chapter 531, 49 Stat. 620, 42 U.S.C. 1395-1395b, 1395b-2, 1395c to 1395i, 1395i-2 to 1395i-4, 1395j to 1395t, 1395u to 1395w-2, 1395w-4 to 1395ccc, or title XIX of the social security act, chapter 531, 49 Stat. 620, 42 U.S.C. 1396 to 1396f and 1396i to 1396u, or coverage pursuant to a medicare supplemental policy or certificate or a contract issued by a health maintenance organization to an individual eligible for medicare is not considered other health and accident coverage for purposes of this section.

Act 143 was not given immediate effect, and thus the amendment ordinarily becomes effective by April 1, 1994, ninety days after the adjournment of the Legislature.

[7] "Offer of such deductibles and exclusions will *virtually eliminate* the current overlap of coverage which occurs when an insured has both the no-fault personal protection benefits and other health and accident coverage which, like the personal protection benefits, covers medical expenses connected with auto accidents and other accidents.

*   *   *

"The bill will eliminate or *drastically reduce* the incidence of

Coordination, however, was not—and is not[8]—mandatory. It was and is the automobile owner's option.[9] If he did not choose to coordinate, he would, perforce, be in the same position as before the 1974 amendment; in the event of an automobile accident, there would be a double recovery of medical expense—recovery from both the automobile insurer and the health care insurer. That the Legislature recognized and contemplated that there would be double recovery clearly appears from the following statement in the analysis of HB 5724, which became § 3109a, prepared by the House Insurance Committee:

"The bill does not make it mandatory for an insurance buyer to select these deductibles and

overlapping coverage for medical expenses related to automobile accidents and hence reduce the cost of such insurance to the insured." [Letter dated February 26, 1974 from Daniel J. Demlow, Commissioner of Insurance, to Governor William G. Milliken, quoted in *LeBlanc v State Farm Mutual Automobile Ins Co,* n 4 *supra,* p 194. Emphasis added.]

---

[8] See n 6 in which the text of § 3109a, as originally enacted in 1974 and the 1993 amendment adding two subsections are set forth.

It is noteworthy that, in its comprehensive reviews of the no-fault act from time to time since 1974, and the amendment of various sections of the act at fifteen legislative sessions, the Legislature has not eliminated the automobile owner's option to not coordinate the medical expense component of his no-fault coverage with other health coverage.

It is especially noteworthy that the 1993 legislation, which represents a substantial overhaul of the no-fault act, and which focused on § 3109a to the extent of adding two subsections, did not eliminate the automobile owner's option not to coordinate.

[9] *LeBlanc,* n 4 *supra,* p 197, in which the Court said:

Section 3109a permits a set-off of "other health and accident coverage" at the insured's option.

The majority acknowledges that the automobile owner has the "option of choosing between uncoordinated or coordinated no-fault automobile insurance . . . ." *Ante,* p 752. "There is no doubt that the Legislature intended § 3109a to give the option of coordinating to the consumer." *Ante,* p 755.

exclusions so *many could still opt for overlapping coverage.*" [Quoted in *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173, 196; 301 NW2d 775 (1981). Emphasis added.]

As set forth in part III, in 1974, when § 3109a was added to the Insurance Code, there were no HMOS such as defendant PHP. Other health coverage meant health insurance provided, for most Michigan residents, by Blue Cross/Blue Shield of Michigan, or by other insurers such as Prudential Insurance Company of America, Metropolitan Life Insurance Company, and Aetna Life Insurance Company. Because an injured person had a choice of physicians under both no-fault and health care policies, there was no reason in 1974 to purchase the overlapping coverage that the Legislature contemplated that "many could still opt for" other than to obtain a double recovery.

This Court—seven years after the no-fault act became effective—observed in 1981, over thirteen years ago, that § 3109a, in providing the automobile owner the option of coordinating or not coordinating, implements "cost reduction" *"on an individual basis rather than in blanket fashion,"* and allows individual automobile owners to *"tailor their insurance coverage to their own special needs."* [10] (Emphasis added.)

The Court contrasted the operative effect of § 3109(1),[11] which *"requires* a subtraction of government benefits from no-fault benefits otherwise payable," with the operative effect of § 3109a which *"permits* a set-off of 'other health and accident coverage' at the insured's option."[12]

---

[10] *LeBlanc, supra,* p 197.

[11] MCL 500.3109; MSA 24.13109.

[12] The Court observed that permissive § 3109a, "like [mandatory] § 3109(1), serves to eliminate duplicate recovery and to contain or

If the automobile owner elected to coordinate, the health care insurer was primarily liable for payment of medical expense, and the automobile no-fault insurer was responsible for excess medical expense—medical expense beyond what the health care insurer had agreed to furnish.[13] *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537; 383 NW2d 590 (1986).[14]

Today—twenty years after § 3109a was added to the no-fault act—the majority concludes that an owner of an automobile who exercises his option to purchase no-fault automobile insurance that is *not*

---

reduce insurance costs; additionally, it allows individuals to tailor their insurance coverage to their own special needs. Cost reduction is implemented under § 3109a on an individual basis rather than in blanket fashion." *LeBlanc, supra,* p 197.

[13] The obligation of the no-fault insurer to pay medical expense is statutory. MCL 500.3107(1)(a); MSA 24.13107(1)(a), provides: "Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." The obligation of the no-fault insurer in that regard is comprehensive. See *Manley v DAIIE,* 425 Mich 140; 388 NW2d 216 (1986); *Nasser v ACIA,* 435 Mich 33; 457 NW2d 637 (1990). *Reed v Citizens Ins Co of America,* 198 Mich App 443; 499 NW2d 22 (1993).

The no-fault act does not set forth the scope of the obligation of a health care insurer. It is beyond the issue presented in this case to consider whether other statutes mandate, or empower the Commissioner of Insurance to regulate, in whole or in part, the scope of health care coverage. Be that as it may, I agree with the majority that, absent such statutes or regulations, health care providers and insurers have a measure of freedom of contract regarding the scope of coverage they provide that no-fault insurers do not have, because the scope of the medical expense component of no-fault benefits is statutory.

[14] In *Federal Kemper,* this Court held that although a policy of health insurance provides that the benefits thereunder are secondary to those provided under a no-fault automobile policy, the health insurer is primarily liable for payment of the health insured's medical expense.

The Analysis of HB 5724, prepared by the House Insurance Committee and quoted in n 26, states that health care costs "could be contained to a greater extent with health and accident as *primary* coverage."

coordinated with health care coverage is not enti-
tled to obtain a double recovery.[15]

I

In every case where this Court has heretofore
considered § 3109a,[16] legislative intent has been the
lodestar in deciding the issue presented, without
regard to whether the dispute was between a no-
fault insurer and a health care insurer, as in
*Federal Kemper,* or between a health care insurer
or provider and a consumer, as in *Tousignant*[17] or
*Owens.*[18]

Today, in the name of reducing the cost of
health care or health care insurance, and in imple-
mentation of the majority's perception of sound
public policy, the majority states that it finds "no
intent by the Legislature," in enacting § 3109a,
requiring no-fault insurers to offer coordinated
coverage at a reduced cost, to "prohibit health
insurers from including coordination of benefit
clauses in the coverage provided by the health
insurance policy."[19]

Thus, although this Court found in *Federal
Kemper,* in which the automobile owner had exer-

[15] See n 9 and accompanying text.

[16] *O'Donnell v State Farm Mutual Automobile Ins Co,* n 3 *supra,* p
550; *LeBlanc v State Farm Mutual Automobile Ins Co, supra,* p 195;
*Federal Kemper Ins Co, Inc v Health Ins Administration, Inc, supra;*
*Tatum v Government Employees Ins Co,* 431 Mich 663; 431 NW2d 391
(1988); *Dep't of Social Services v American Commercial Liability Ins
Co,* 435 Mich 508; 460 NW2d 194 (1990); *John Hancock Property &
Casualty Ins Cos v Blue Cross & Blue Shield of Michigan,* 437 Mich
368; 471 NW2d 541 (1991); *ACIA v Frederick & Herrud, Inc,* 443 Mich
358; 505 NW2d 820 (1993); *Profit v Citizens Ins Co of America,* 444
Mich 281; 506 NW2d 514 (1993); *Tousignant v Allstate Ins Co,* 444
Mich 301; 506 NW2d 844 (1993); *Owens v Auto Club Ins Ass'n,* 444
Mich 314; 506 NW2d 850 (1993).

[17] See n 16 for full citation. See also n 21.

[18] See n 16 for full citation. See also n 21.

[19] *Ante,* p 746.

cised his option to coordinate, a legislative intent to, in effect,[20] "prohibit health insurers from including coordination of benefits clauses in the coverage provided by the health insurance policy."[21]

The Court thus had no difficulty "finding" legislative intent to "prohibit health insurers from including coordination of benefits clauses" where automobile owners had elected to coordinate. But the majority concludes today, where an automobile owner elected not to coordinate, that there is no legislative intent, thereby freeing the majority, in the name of freedom of contract, to stand on its head the choice provided automobile owners by § 3109a to coordinate or not to coordinate the medical expense component of no-fault benefits with other health coverage.

A

In both *Federal Kemper* and in *Tousignant v*

---

[20] The Legislature did not in terms prohibit health insurers from including coordination of benefits clauses in the coverage provided by a health insurance policy. Nor did *Federal Kemper* expressly prohibit health insurers from including coordination of benefits clauses. But, in denying enforcement of coordination of benefits clauses in a health insurance policy, *Federal Kemper* did, in effect, prohibit health insurers from including such clauses.

[21] In *Tousignant* and *Owens*, in which the automobile owners also had exercised their option to coordinate, the Court found a legislative intent to bar them from obtaining medical care from the no-fault insurer in preference to a health care provider. In *Tousignant*, this Court said:

Whether the controversy is between a no-fault and a health insurer as in *Kemper*, or is between a no-fault insurer and a no-fault insured, as in the instant case, to make effective the legislative policy underlying § 3109a, *the health insurer is the primary insurer* to the extent the health insurer has agreed to pay for or provide necessary medical care. [*Tousignant,* n 16 *supra,* p 308. Emphasis added.]

*Allstate Ins Co,* 444 Mich 301; 506 NW2d 844 (1993)/*Owens v Auto Club Ins Ass'n,* 444 Mich 314; 506 NW2d 850 (1993), the unsuccessful litigants, the health care insurers and providers in *Federal Kemper,* the automobile owners in *Tousignant* and *Owens,* argued that allowing the injured person to recover from the no-fault insurer would avoid double recovery as effectively as allowing recovery against the health care insurer or provider.

In *Federal Kemper,* the health care insurers unsuccessfully argued that there would only be one recovery if this Court were to enforce the coordination of benefits clause in health insurers' policies so that the no-fault insurer would be the primary source of recovery, and, indeed, the only source of recovery for medical expense.[22]

In *Tousignant* and *Owens,* the injured persons unsuccessfully argued that there would be only one recovery if they were permitted to recover from the no-fault insurer, rather than from the health care providers.

In the instant case, in which the automobile owner elected not to coordinate, defendant PHP, an HMO health care provider, succeeds in persuading a majority of this Court with a double recovery argument. The majority is persuaded that freedom of contract and public policy justify a revisionary approach to the construction and application of § 3109a. Heretofore, the Court found a legislative intent to in effect "prohibit health insurers from including coordination of benefits clauses."[23] Today the majority is unable to find such an intent.

---

[22] Alternatively, health care insurers argued, also unsuccessfully, that the cost of such expense should be shared by the health and automobile insurers. See *St Paul Fire & Marine Ins Co v American Home Assurance Co,* 444 Mich 560; 514 NW2d 113 (1994).

[23] See n 20 and accompanying text.

B

The lodestar is, or ought to be, legislative intent, not freedom of contract. This Court is necessarily construing § 3109a whether the automobile owner elects to coordinate or not to coordinate. When § 3109a was enacted, providing the automobile owner with the "opportunity" to coordinate the medical expense component of a no-fault policy with other health coverage, the Legislature provided the automobile owner an "option" to obtain a double recovery as under the original 1972 no-fault act. It was not to be the health care insurer's choice, or, in those cases in which the employer provides health insurance as part of the remuneration package, the employer's choice. Clearly, it was not to be the automobile insurer's choice. Nor is it this Court's choice.

Allowing an opportunity to obtain a double recovery of medical expense is indeed questionable public policy, as the Legislature recognized in providing automobile owners with the opportunity to purchase coordinated coverage, in the expectation that most automobile owners would, as they have, choose to reduce the cost of automobile insurance in exchange for the elimination of the redundancy of a double recovery.[24] But the Legisla-

───────────

[24] See n 4. The letter from the Commissioner of Insurance to the Governor there set forth stated that "double recovery is contrary to public policy."

There were, however, competing policy considerations and interests. As set forth in the analysis of HB 5724 prepared by the House Insurance Committee, the Michigan Association of Insurance Companies did not support the bill.

Section 3109a was a compromise that the Commissioner of Insurance and the Governor both favored. While today it may appear to some that eliminating double recovery is the foremost policy consideration, at the time those involved, and most importantly the Legislature, decided to make coordination optional and not mandatory, recognizing that there would continue to be overlapping coverage and resulting double recovery by those who became involved in injury

ture deliberately chose not to eliminate "overlapping coverage" and, as this Court observed in *LeBlanc*, to implement "[c]ost reduction" "on an individual basis rather than in blanket fashion" and to allow automobile owners to "tailor their insurance coverage to their own special needs."[25]

In substituting its view of what constitutes sound public policy for the legislative decision to permit overlapping coverage, and the continuation of double recovery by those automobile owners willing to pay for overlapping coverage, this Court exceeds the appropriate exercise of its authority.

## II

Allowing health care insurers through coordination of benefits clauses to relieve themselves of the health care cost of automobile accidents would, as the Legislature recognized in 1974, tend to increase the overall cost of providing medical care to persons injured in automobile accidents because health care policies "have established limits on their reimbursement of doctor and hospital expenses."[26] In 1974, there were no "established limits"

accidents who had been willing to pay the higher no-fault premium for uncoordinated coverage.

The legislative expectation was that most automobile owners would not be willing to pay the higher premium, and that has been the experience—most automobile owners choose to pay the lower premium that goes with coordinated medical expense coverage.

[25] See n 12.

[26] "The skyrocketing hospital and medical costs could be contained to a greater extent with health and accident as the primary coverage since these policies, like the Blue Cross/Blue Shield plans, have established limits on their reimbursement of doctor and hospital expenses. A physician who knows his or her patient has unlimited medical coverage has no incentive to keep the doctor bill at a minimum." [Analysis of HB 5724 prepared by the House Insurance Committee, quoted in *LeBlanc v State Farm Mutual Automobile Ins Co, supra,* pp 197-198.]

on the obligation of a no-fault insurer to pay medical expense of an injured person.[27] The question whether such limits should be established may yet be on the November ballot.

### III

The majority, recognizing that an automobile owner who exercises his option not to coordinate the medical expense component of his no-fault insurance with other health coverage has paid an additional premium therefor, suggests a reason for purchasing overlapping coverage other than to obtain a double recovery. The majority points out that where the health coverage is provided by an HMO, such as the defendant PHP, "the ability to seek treatment outside the service area is limited. Purchasers who elect uncoordinated no-fault may have a greater range of choice and control over who their treating physician will be, what type of treatment is possible, and where such treatment can be obtained."[28]

In 1974, when § 3109a was enacted, other health coverage was provided by health insurers, principally by Blue Cross/Blue Shield of Michigan and other insurers such as Prudential Insurance Company of America, Aetna Life Insurance Company, and Metropolitan Life Insurance Company.

There were no HMOs in 1974. The HMO enabling act was enacted in 1974.[29] The first HMOs were licensed in 1975. The largest HMO today, Health Alliance Plan, was licensed in 1979. Defendant PHP was licensed in 1981, seven years after § 3109a was enacted.

---

[27] See n 13. 1993 PA 143 establishes limits to the no-fault insurer's obligation under § 3107 to pay medical expenses of an injured person.

[28] *Ante,* p 759.

[29] 1974 PA 264, former MCL 325.901 *et seq.*; MSA 14.1280(1) *et seq.,* now MCL 333.21001 *et seq.*; MSA 14.15(21001) *et seq.*

The Legislature, in permitting the continuation
of overlapping coverage for injured persons where
an automobile owner chooses not to coordinate,
could not, in 1974, have had in mind the reason
suggested by the majority of enabling injured per-
sons covered by an HMO plan to have a choice of
physician and ability to obtain medical care "out-
side the service area." In 1974, because other
health coverage was provided by insurers, freedom
of choice of physician and portability of coverage
was a feature of all other health coverage.

Michigan citizens who have other health cover-
age generally have such coverage through an in-
surer, not a provider such as an HMO. The reason
suggested by the majority does not explain why a
person whose other health coverage was, or is now
with BCBSM, Prudential, Metropolitan, Aetna, or
another health insurer, would continue to pay the
higher premium for uncoordinated coverage. Even
those whose coverage is through an HMO may be
content, as was the plaintiff in the instant case,
with the choice of physician provided by the HMO.
The majority has yet to supply a reason for an
automobile owner opting to pay the higher pre-
mium for uncoordinated coverage, other than to
have overlapping coverage and the possibility of a
double recovery.

The majority observes, in response, that "it is
not the responsibility of the health insurer to
provide the benefit the insured seeks from the no-
fault carrier," he "contracted for uncoordinated
benefits from his no-fault insurer, which he re-
ceived, and for coordinated coverage from his
health insurer, which he received. That the in-
sured did not get more than his bargain is not a

problem to be rectified by either the health insurer or this Court."[30]

The automobile owner/insured in *Federal Kemper* also "contracted for . . . coordinated coverage from his health insurer." He did not, however, receive coordinated coverage from his health insurer. He received, contrary to his contract with the health insurer, *un*"coordinated coverage from his health insurer." This Court so mandated, in *Federal Kemper,* in order to effectuate the legislative intent in enacting § 3109a; the Court was of the opinion, contrary to what the majority says today, that it was "the responsibility of the health insurer to provide the benefit [reduced no-fault insurance premium rates] the insured seeks from the no-fault carrier."

This Court, in *Federal Kemper,* saw that implementation of legislative intent required that result even though § 3109a does not specifically "regulate[ ],"[31] "substantively dictate the

---

[30] *Ante,* p 759, n 13.

The majority states:

> In response to Justice Levin's dissent, *post,* pp 772-773, in which it is asserted that the majority has not provided a reason that an insured would purchase uncoordinated no-fault insurance other than double recovery, we observe that even if double recovery is the aim of the insured, it is not the responsibility of the health insurer to provide the benefit the insured seeks from the no-fault carrier. While it may be obvious that the insured wanted double recovery, the fact remains that he only contracted with one of the two necessary parties. He contracted for uncoordinated benefits from his no-fault insurer, which he received, and for coordinated coverage from his health insurer, which he received. That the insured did not get more than his bargain is not a problem to be rectified by either the health insurer or this Court.

The statement that the "fact remains that [the automobile owner/insured] only contracted with one of the two necessary parties" seems inconsistent with the next sentence, stating that he "contracted for uncoordinated benefits from his no-fault insurer . . . and for coordinated coverage from his health insurer."

[31] *Ante,* p 750.

terms,"[32] or control "the status of health insurance"[33] or "prohibit health insurers from including coordination of benefit clauses in the coverage provided by the health insurance policy."[34]

The law of economics made that the only reasonable conclusion. Any other conclusion would have rendered the option granted the automobile owner/insured meaningless; as the Court says today, the automobile owner/insured's "option would be rendered meaningless if health care providers are allowed to opt out when the no-fault coverage is coordinated."[35]

The law of economics required a decision in *Federal Kemper* in favor of no-fault insurers because a no-fault insurer could not provide automobile no-fault insurance coordinated with other health insurance at the legislatively contemplated reduced premium unless there was a reduction in its financial exposure—a reduction that would be defeated if the coordination-of-benefits clause the automobile owner/insured *contracted for* with his health insurer were valid.

The same law of economics should be observed by this Court in the analysis and resolution of the issue here presented. An automobile owner/insured who elects not to coordinate, does so to obtain the legislatively contemplated "overlapping coverage,"[36] with the consequent double recovery. Just as the law of economics requires that there be a reduction in an automobile insurer's exposure in exchange for a reduced premium, so, too, it requires an increase in coverage to an automobile

[32] *Ante,* p 754.

[33] *Ante,* p 756.

[34] *Ante,* p 746.

[35] *Ante,* p 755.

[36] See text following n 9.

owner/insured in exchange for a nonreduced premium—"double" coverage for "double" premium.

Enforcement today of the health insurer's coordination clause defeats the automobile owner/insured's economically and legislatively based expectation as surely as it would have defeated the automobile insurer's economically and legislatively based expectation if this Court had decided *Federal Kemper* differently. Why the law of economics does not make clear the correct path of decision in this case as it did in *Federal Kemper* has yet to be explained.

The Court's holding, sustaining the validity of the health insurer's coordination clause, stultifies the option legislatively granted to the automobile owner/insured not to coordinate, defies the law of economics, and substitutes the Court's judgment of sound public policy for that of the Legislature. However outdated[37] the legislative judgment may appear to the majority to be, twenty years after § 3109a was added to the no-fault act, the Court should resist the temptation to do the right thing for the wrong reason.[38]

There is no windfall to a person injured in an automobile accident where the no-fault insurance was not coordinated with other health coverage—the owner of the automobile paid a higher premium for the overlapping coverage and double recovery to tailor, in the words of this Court, his

[37] Employers who wish to avail themselves of the opportunity to reduce the cost of providing health insurance by transferring part of the burden to automobile insurers may already be seeking to avail themselves of this Court's decision in *Auto Club Ins Ass'n v Frederick & Herrud, Inc,* 443 Mich 358, 389-390; 505 NW2d 820 (1993).

In all events, in recognition of the tens, possibly hundreds of millions of dollars paid by automobile owners/insureds for overlapping coverage, any change in the law should be made prospective.

[38] With acknowledgment to T. S. Elliot, *Murder in the Cathedral,* pt. I.

insurance coverage to his "own special needs."[39] Today's decision denies automobile owners, in the name of freedom of contract for health insurers/providers, the benefit of the bargain automobile owners and no-fault insurers made in reliance on this Court's earlier decisions.

There is, however, a windfall. The windfall is to health insurers and providers who have been collecting premiums for years on the basis that the health insurer/provider is primary without regard to the language of the health insurer's/provider's policy.

The defendant PHP was, of course, unable to show that it had reduced its premium charges because of the clause in its contract that would make the no-fault insurer primary. PHP's lawyers would not have advised PHP that it could prudently price the health care coverage it was agreeing to provide subscribers on the assumption that this clause, found by this Court in *Federal Kemper* to be unenforceable when an automobile owner elects to coordinate, would be found to be valid by this Court when an automobile owner elects not to coordinate.

IV

The purpose of § 3109a was to reduce the cost of automobile insurance, not the cost of providing health care or health care insurance.

The cost to health care insurers/providers of providing care to persons injured in automobile accidents will be reduced. But the cost of health care may increase, as the Legislature apparently thought in deciding that it was in the public

[39] See n 10 and accompanying text.

interest that health care insurers be primary for an automobile accident.[40]

There is no assurance that this Court's decision will result in a reduction of premium charges by health insurers/providers. This Court is in no position to monitor what health insurers/providers do in this regard.[41]

V

The majority refers[42] to the Coordination of Benefits Act[43] and a provision[44] in chapter 36 of the Insurance Code. The Coordination of Benefits Act concerns competing coordination of benefits clauses in policies of health insurance, not a coordination of benefits clause that would, in effect, make an automobile no-fault insurer primary. Chapter 36 concerns group and blanket disability insurance; the provision adverted to by the majority concerns coordination of benefits otherwise payable under other group insurance and, among other things, "[a]utomobile medical payment insur-

---

[40] See part II.

[41] Section 3109a requires the Commissioner of Insurance to monitor what automobile no-fault insurers do in this regard.

[42] *Ante,* p 750, n 5.

The majority also refers (*ante,* p 754, n 6) to a provision of The Nonprofit Health Care Corporation Reform Act (1980 PA 350, MCL 550.1101 *et seq.*; MSA 24.660[101] *et seq.*) that authorizes BSBCM to issue a certificate that. provides "for the coordination of benefits, subrogation, and the nonduplication of benefits." MCL 550.1401(4); MSA 24.660(401)(4). Clearly, this language does not address the question whether enforcing such a provision in a certificate issued by BCBSM would be consistent with the legislative policy embodied in § 3109a. We know from *Federal Kemper* that such a provision is unenforceable where the automobile owner elects to coordinate. It begs the question presented in this case to cite this provision as bearing on the correct resolution of the question presented.

[43] 1984 PA 64, MCL 550.251 *et seq.*; MSA 24.13671 *et seq.*

[44] MCL 500.3610a; MSA 24.13610(1).

ance." Automobile medical payment insurance is not no-fault insurance.[45]

It is again significant that the majority, in citing these inapposite legislative enactments, ignores the failure of the Legislature in the recent 1993 legislation to eliminate, while amending § 3109a,[46] the opportunity for a double recovery that the majority finds so offensive.

## VI

I agree with the majority[47] that there is no need to consider whether § 3109a is preempted by the Employee Retirement Insurance Security Act.[48]

In *Auto Club Ins Ass'n v Frederick & Herrud, Inc*, 443 Mich 358, 389-390; 505 NW2d 820 (1993), this Court held that by reason of the ERISA, an unambiguous coordination of benefits clause in an ERISA health and welfare benefit plan "must be given its plain meaning despite the existence of a similar clause in a no-fault policy," and that to the extent that *Federal Kemper* "is inconsistent with our holding today, it is overruled." This Court emphasized in conclusion "that the primacy of health care coverage over that in a no-fault policy continues in Michigan jurisprudence in all cases not within the purview" of the Court's "narrow holding" in that case. *Id.,* p 390.

## VII

The majority states that the question presented

---

[45] Automobile medical payment insurance is the kind of coverage that was provided under automobile liability policies issued before the no-fault act. Such policies may still be issued in states that do not have a no-fault act, or in states that provide, under their no-fault act, benefits that differ significantly from those provided under this state's no-fault act.

[46] See n 6 for text of § 3109a and the 1993 amendments.

[47] *Ante,* p 746, n 2.

[48] 29 USC 1001 *et seq.*

is whether § 3109a "requires health insurers whose policies contain coordination of benefits clauses to *reimburse an insured* for medical expenses paid by an automobile no-fault insurer under a policy in which the insured elected uncoordinated medical coverage."[49] (Emphasis added.)

In the instant case, it appears that the no-fault insurer provided funds to cover Michelle Smith's medical expenses, which were transmitted to defendant PHP, which was the HMO provider of health care for her family. The question presented is not whether an HMO provider is obligated to "reimburse" or otherwise pay money to an HMO insured, but rather whether an HMO provider may, consistent with § 3109a, demand payment for services, where the automobile owner elected not to coordinate that it would be required, under *Federal Kemper,* to render without charge if the owner of the automobile had elected to coordinate.

I would affirm the decision of the Court of Appeals.

---

[49] *Ante,* p 746.