WELLS FARGO BANK, NA, Plaintiff,

v.

MPC INVESTORS, LLC, Dominic Moceri, Gerald Carnago, Francis V. Moceri, Mariano Moceri, Peter K. Burton, Robert M. Katzman, Laurence R. Goss, Steven Bentley, Salvatore J. Palazzolo, Sebastian D. Palazzolo, Gregory A. Carnago, and Dominic J. Moceri, Defendants,

and

Gregory A. Carnago and Gerald Carnago, Cross–Plaintiffs,

v.

Laurence R. Goss, Steven Bentley, Salvatore J. Palazzolo, Sebastian D. Palazzolo, Peter K. Burton, and Robert M. Katzman, Cross–Defendants.

Case No. 09–11249.

United States District Court,
E.D. Michigan,
Southern Division.

April 9, 2010.

Brian M. Moore, Dykema Gossett, Detroit, MI, Joseph H. Hickey, Dykema Gossett, Bloomfield Hills, MI, for Plaintiff.

Dean R. Nelson, Jr., Charles J. Taunt & Associates, PLLC, Birmingham, MI, Gregory D. Hanley, Timothy O. McMahon, Kickham, Hanley P.C., Royal Oak, MI, David E. Schlackman, Carson Fischer, Howard Borin, Schafer & Weiner, Bloomfield Hills, MI, for Defendants.

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DIRECTING ENTRY OF FINAL JUDGMENT, AND SCHEDULING STATUS CONFERENCE ON CROSS–CLAIMS

DAVID M. LAWSON, District Judge.

The plaintiff bank filed suit in this case against a borrower and several guarantors to recover the balance of money due on a defaulted $4 million loan. The Court granted a default judgment against the borrower, MPC Investors, LLC. The plaintiff settled with one of the guarantors and filed a motion seeking summary judgment against the rest of them. The Court heard oral argument in open court on March 16, 2010, after which it gave the parties time to file supplemental affidavits. The matter is now ready for decision. The Court finds that there are no material facts in dispute, and the plaintiff is entitled to judgment as a matter of law in the amounts requested against the general guarantors and the remaining limited guarantor. The defendants have filed cross-claims against each other, which remain pending. The Court also finds, however, that there is no just reason for delaying entry of a final judgment against the defendants in favor of the plaintiff. The plaintiff's motion for summary judgment, therefore, will be granted.

## I.

On June 28, 2006, the plaintiff extended a $4 million loan ("the Loan") to MPC Investors, Inc. ("MPC"), a limited liability company comprised of four other limited liability companies: Moceri Stoney Creek, LLC; B/K/G Investors, LLC; Palazzolo Bros of Oakland, LLC; and Carnago Investments, LLC. Each of these companies is in turn comprised of other limited liability companies, individual trust funds, and individuals. The Loan was jointly and severally guaranteed by several general guarantors and two limited guarantors. The general guarantors are:

- Dominic J. Moceri, individually and as Trustee of the Dominic J. Moceri Living Trust;
- Francis V. Moceri, individually and as Trustee of the Francis V. Moceri Revocable Living Trust;
- Mariano Moceri, individually and as Trustee of the Mariano Moceri Revocable Living Trust;
- Peter K. Burton, individually and as Trustee of the Amended and Restated Revocable Living Trust;
- Robert M. Katzman, individually and as Trustee of the First Amendment and Restatement of Agreement of Trust of Robert M. Katzman;
- Laurence R. Goss, individually and as Trustee of the Laurence R. Goss Revocable Living Trust;
- Steven Bentley, individually;
- Salvatore J. Palazzolo, individually and as Trustee of the Salvatore J. Palazzolo Revocable Living Trust;
- Sebastian D. Palazzolo, individually and as Trustee of the Sebastian D. Palazzolo Trust; and
- Gregory A. Carnago, individually and as Trustee of the Gregory A. Carnago Trust.

*See* Compl., Ex. 3, Repayment Guaranty. The general guarantors "guarantee[d] and

promise[d] to pay to Lender or order ... the principal sum of FOUR MILLION AND NO/100THS DOLLARS ($4,000,-000.00) or so much thereof as may be due and owing under the Note or any of the other Loan Documents together with interest and any other sums payable...." Compl., Ex. 3, Repayment Guaranty, ¶ 1 (emphasis in original); *see also id.* ¶ 8 (agreeing to pay attorney's fees arising out of enforcement actions). As part of the agreement, the general guarantors also agreed to waive all defenses to enforcement that the borrower might have.

The Loan was also guaranteed by two limited guarantors:

- Dominic S. Moceri, individually and as Trustee of the Moceri Family Living Trust; and
- Gerald Carnago, individually and as Trustee of the Gerald J. Carnago Trust.

Compl., Ex. 4, Limited Repayment Guaranty. The language of the general and limited guaranty documents is identical, save for the addition of paragraph 16 in the Limited Repayment Guaranty, which states:

> **LIMITATION.** Notwithstanding anything to the contrary set forth herein, the total obligation of each of the undersigned under this Guaranty shall not exceed the sum of (i) fifty percent (50%) of the amount of the principal amount of the Loan (as determined by Lender in writing but not sooner than the date the indebtedness becomes due and payable, whether by acceleration or otherwise [the "Determination Date"]), *plus* (ii) accrued interest on the unpaid limited principal amount described in the preceding clause (i) from the Determination Date at the highest default rate set forth in the Note to the date of payment of the principal amount described in the preceding clause (i) that is paid to Lend-

er by such Guarantor, *plus* (iii) all expenses (including, without limitation, reasonable attorneys' fees) which may be incurred or paid by Lender (until the date of payment to Lender) in preserving, protecting or enforcing its rights or remedies in connection with or collecting against the Guarantor that is making the payments required in the preceding clauses (i) and (ii). In the event that the applicable Guarantor does not pay the entire amount owing to Lender under clause (i) in a lump sum then interest will continue to accrue on the unpaid principal amount for which the Guarantor is liable at the default rate set forth in the Note until the date of payment of that amount in full. Likewise, to the extent that the Lender continues to incur costs and expenses in preserving, protecting or enforcing its rights or remedies in connection with collecting against such Guarantor then that Guarantor will continue to be liable to Lender for those costs and expenses that Lender incurs.

Compl., Ex. 4, Limited Repayment Guaranty, ¶ 16.

The Loan Agreement was modified twice. The original maturity date of the loan was November 1, 2006. The first modification extended the maturity date to July 1, 2007. The second modification, which took place on August 1, 2007, extended the maturity date to May 1, 2010. As part of this modification, the following requirement was added: "commencing August 1, 2007 and each February 1 and August 1 thereafter during the term of the Loan, [MPC] will pay Lender the sum of FIVE HUNDRED THOUSAND AND NO/100THS DOLLARS ($500,000.00) as mandatory, permanent principal reduction payments." Compl. ¶ 35 & Ex. 6, Modified Loan Agreement, ¶ 3.1 modifying ¶ 2.6 (emphasis in original). The parties also executed a Restated Promissory Note including these terms. The Promissory Note contained the following language concerning interest amounts:

[The borrower promises to pay the lender the principal amount of the loan] with interest thereon (based on a 360–day year and charged on the basis of actual days elapsed) at the rate of Zero Percent (0%) per annum in excess of Lender's "Prime Rate" in effect from time to time. As used herein, the term "Prime Rate" means a base rate of interest which Lender establishes from time to time and which serves as the basis upon which effective rates of interest are calculated for those loans making reference thereto. Any change in the rate of interest on this note ("Note") due to a change in the Prime Rate shall become effective on the date each change in the Prime Rate is announced within Lender.

Compl., Ex. 7, Restated Promissory Note, ¶ 1. The agreement also contains the following language increasing the interest rate after the lender accelerates payment on the loan:

From and after the Maturity Date, or such earlier date as all sums owing on this Note become due and payable by acceleration or otherwise, all sums owing on this Note shall bear interest until paid in full (based on a 360–day year and charged on the basis of actual days elapsed) at a rate equal to 5% per annum in excess of the interest rate otherwise accruing under this Note.

*Id.* ¶ 8.

It is undisputed that MPC made the required semi-annual payments on August 1, 2007, February 1, 2008, and August 1, 2008. However, MPC failed to make the $500,000 payment due on February 1, 2009 under the modified loan agreement. The plaintiff declared a default under the terms of the loan agreement and sent a notice of default, acceleration, and a demand for payment to MPC, copied to all guarantors,

on March 19, 2010. When MPC failed to cure the default by March 30, 2009, the plaintiff sent a demand for payment to all of the guarantors.

When no payments were forthcoming, the plaintiff filed a complaint on April 3, 2009 and an amended complaint on April 7, 2009. The amended complaint alleges breach of contract against MPC and breach of guaranty against the general and limited guarantors. Thereafter, defendants Gregory and Gerald Carnago filed a crossclaim for contribution against Laurence Goss, Steven Bentley, Salvatore Palazzolo, Sebastian Palazzolo, Peter Burton, and Robert Katzman. On August 14, 2009, the Court entered a default judgment in favor of the plaintiff against defendant MPC in the amount of $2,584,534.53, inclusive of all principal, interest, and late charges as of July 31, 2009 but not including post-judgment interest and attorney's fees. Defendant Dominic S. Moceri, a limited guarantor, settled with the plaintiff and paid approximately $1,093,424.50 on November 17, 2009.

The plaintiff moved for summary judgment against the remaining defendants. Based on the supplemental affidavit of Christopher Chapman, a representative of Wells Fargo Bank, the plaintiff alleges that the general guarantors are liable for $1,406,575.50, exclusive of fees and costs, and the remaining limited guarantor is liable for $1,328,229.16. The general guarantors do not seriously contest liability, although they have questioned the plaintiff's damages calculations. The remaining limited guarantor, Gerald Carnago, argues that the settlement and payment by Dominic S. Moceri, the other limited guarantor, extinguishes Carnago's liability, and the language of the limited guarantee requires a calculation of the amount of damages in an amount substantially less than that claimed by the plaintiff.

## II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 581 (6th Cir.2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler,* 215 F.3d 594, 599 (6th Cir.2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.,* 14 F.3d 1143, 1148 (6th Cir.1994) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala,* 205 F.3d 937, 943 (6th Cir.2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit,* 287 F.3d 527, 534 (6th Cir.2002). Thus a factual dispute which "is merely colorable or is not signifi-

cantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.1993); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

■ The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir.2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. If the nonmoving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

■ In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir.2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir.1991). "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts." ' " *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir.2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Ibid.* (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505) (internal quote marks omitted).

■ When the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden. *Vance v. Latimer*, 648 F.Supp.2d 914, 919 (E.D.Mich.2009); *see also Stat–Tech Liquidating Trust v. Fenster*, 981 F.Supp. 1325, 1335 (D.Colo.1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense"); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir.1992). In his commentary on affirmative motions for summary judgment, Judge William Schwarzer explains:

> When the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, it must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the

claim—by showing that it would be entitled to a directed verdict at trial.

William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441, 477–78 (1992) (footnote omitted).

The case is before the Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and the plaintiff's claim is based entirely on state law. Therefore, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.'" *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir.1995) (quoting *Bailey v. V. & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985)). "Relevant data includes the state's intermediate appellate court decisions, as well as the state supreme court's relevant dicta, restatements of the law, law review commentaries, and the majority rule among other states." *Ososki v. St. Paul Surplus Lines,* 156 F.Supp.2d 669, 674 (E.D.Mich.2001) (internal quotes and citation omitted).

### A.

The plaintiff argues that the language of the loan documents is clear and unambiguous as to both the general and limited guarantors. The plaintiff maintains that the guarantees ought to be construed as an issue of law by the Court. Finally, the plaintiff claims that it has established the amounts due and owning in an affidavit by Christopher Chapman, and there is no material fact dispute as to the amount of damages.

■ A guaranty contract is "an enforceable undertaking or promise by one person collateral to a primary or principal obligation of another which binds the person making the promise to performance of the primary obligation in the event of nonperformance; the secondary party thus becomes primarily responsible for performance." *Angelo Iafrate Co. v. Detroit & N. Sav. & Loan Ass'n,* 80 Mich.App. 508, 514, 264 N.W.2d 45, 48 (1978). Michigan courts have long held that guaranty agreements "are to be construed like other contracts." *In re Landwehr's Estate,* 286 Mich. 698, 702, 282 N.W. 873, 875 (1938) (quoting *Morris & Co. v. Lucker,* 158 Mich. 518, 123 N.W. 21 (1909)). Under Michigan law, the elements of a valid contract are: (1) parties competent to enter into a contract, (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Thomas v. Leja,* 187 Mich.App. 418, 422, 468 N.W.2d 58, 60 (1991). The party seeking to enforce the contract has the burden to show the existence of the contract. *Ibid.*

■ When construing a guaranty agreement, Michigan precedent maintains that the intentions of the parties govern. *First Nat'l Bank of Ypsilanti v. Redford Chevrolet Co.,* 270 Mich. 116, 121, 258 N.W. 221, 223 (1935). To ascertain the parties' intentions, the Court should look to the language of the parties' written agreement first. *Haywood v. Fowler,* 190 Mich.App. 253, 258, 475 N.W.2d 458, 461 (1991) ("Where the language of a contract is clear and unambiguous, the intent of the parties will be ascertained according to its plain sense and meaning."); *see also Wilkie v. Auto–Owners Ins. Co.,* 469 Mich. 41, 61, 664 N.W.2d 776, 787 (2003) ("Well-settled principles of contract interpretation require one to first look to a contract's plain language. If the plain language is clear, there can be only one reasonable interpretation of its meaning and, therefore, only one meaning the parties could reasonabl[y] expect to apply. If the language is ambiguous, longstanding principles of contract law require that the am-

biguous provision be construed against the drafter." (internal citations and quotation marks omitted)). Michigan precedent narrowly construes guaranty contracts and grants the language only its plain meaning. *Mazur v. Young,* 507 F.3d 1013, 1021–22 (6th Cir.2007) (citing *Bandit Indus., Inc. v. Hobbs Int'l, Inc.,* 463 Mich. 504, 512, 620 N.W.2d 531, 535 (2001)) (declaring that courts should "apply the principle of strict interpretation to the construction of [a guaranty] contract"); *Dillon v. DeNooyer Chevrolet Geo,* 217 Mich.App. 163, 550 N.W.2d 846, 848 (1996) ("Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided.").

■■■ " 'Where the language of the writing is not ambiguous the construction is a question of law for the court, on a consideration of the entire instrument.' " *In Re Landwehr's Estate,* 286 Mich. at 702, 282 N.W. at 874 (quoting *Griffin Mfg. Co. v. Mitshkun,* 233 Mich. 640, 642, 207 N.W. 814, 816 (1926)). A contract is unambiguous if it "fairly admits of but one interpretation." *Allstate Ins. Co. v. Goldwater,* 163 Mich.App. 646, 648–49, 415 N.W.2d 2, 4 (1987). Courts should not read an ambiguity into an agreement where none clearly exists. *UAW–GM Human Res. Center v. KSL Recreation Corp.,* 228 Mich.App. 486, 491, 579 N.W.2d 411, 414 (1998) (citing *Smith v. Physicians Health Plan, Inc.,* 444 Mich. 743, 759, 514 N.W.2d 150, 163 (1994)). However, if " 'the contract language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact.' " *Ibid.* (quoting *Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist.,* 452 Mich. 309, 323, 550 N.W.2d 228, 237 (1996)); *see also Klapp v. United Ins. Group Agency, Inc.,* 468 Mich. 459, 469, 663 N.W.2d 447 (2003). Where the terms of a contract are ambiguous, the Court should look to extrinsic facts along with the terms of the agreement to determine the parties intentions. *Klapp,* 468 Mich. at 469, 663 N.W.2d 447. However, such evidence "cannot be extended to contradicting [the agreement's] plain provisions." *In re Landwehr's Estate,* 286 Mich. at 703, 282 N.W. at 875 (quoting *In re Kelley's Estate,* 173 Mich. 492, 499, 139 N.W. 250, 252 (1913)). Ambiguous contracts generally present questions of fact for trial. *Klapp,* 468 Mich. at 467, 663 N.W.2d 447.

As mentioned, the general guarantors, defendants Dominic J. Moceri, Francis V. Moceri, Mariano Moceri, Peter K. Burton, Robert M. Katzman, Laurence R. Goss, Steven Bentley, Salvatore J. Palazzolo, Sebastian D. Palazzolo, and Gregory A. Carnago do not contend that the guarantee is ambiguous or invalid. They concede liability but "leave plaintiff to its proof" of the amount of damages. They argue that the affidavit submitted by Wells Fargo vice president Christopher Chapman lacked the details necessary to permit the Court to determine the correct amount of damages. At oral argument, the Court suggested that the defendants' argument might have merit, and, despite the fact that no defendant had submitted a competing affidavit stating an alternate calculation, allowed the parties additional time to file supplemental affidavits on the issue of damages.

Mr. Chapman submitted a supplemental affidavit on March 23, 2010 explaining that the borrower failed to make a principal payment, resulting in a default under the restated promissory note as of March 19, 2009. Interest accrued at prime, which was 3.25%, from March 1 through 18, 2009, and at the default rate thereafter, which was 5% over prime. He concluded that the general guarantor's obligation is as follows:

| | |
|---|---|
| Principal Amount (as of the Determination Date) Less Settlement Payment received from Dominic Moceri on 11/17/09: | $1,250,000.00 |
| Accrued Interest from 3/1/09 through 3/18/09: | $ 4,062.50 |
| Accrued Interest from 3/19/09 through 11/16/09: | $ 139,218.75 |
| Accrued Interest from 11/17/09 through 3/30/10: | $ 38,385.42 |
| Total Due (exclusive of attorney's fees/costs) | $1,431,666.67 |

Suppl. aff. of Chapman ¶ 9.

None of the defendants have submitted a counter-affidavit or otherwise challenged Chapman's calculations. Of course, a party opposing a motion for summary judgment must do more that maintain silence in the face of the movant's affidavit. "[T]he party opposing summary judgment must show that [ ]he can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.2009) (emphasis omitted). Christopher Chapman's affidavit on damages is cogent, convincing, and unopposed. "Once a moving party with the burden of proof makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party comes forward with probative evidence that would demonstrate the existence of a triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir.2003). The plaintiff has established all the elements of its claim as a matter of law, including proof of its damages, and therefore is entitled to summary judgment against the general guarantors in the amount of $1,431,666.67.

### B.

Limited guarantor Gerald Carnago argues that the payment by co-limited guarantor Dominic Moceri extinguished any remaining obligation he had. Carnago reasons that paragraph 16 of the Limited Guaranty must be read to restrict the *collective* exposure of the limited guarantors as a group to one-half of the principal amount of the note, which Moceri already has satisfied. He reads the language in paragraph 16—"the total obligation of each of the undersigned under this Guaranty shall not exceed the sum of (i) fifty percent (50%) of the amount of the principal amount of the Loan ...."—as referring only to the fact that more than one person signed the limited guaranty. He finds support for this interpretation in the fact that the term "Guarantor" is used throughout paragraph 16 only in the singular, implying that each signatory can be held liable for no more than his aliquot share of 50% of the total outstanding balance of the note, which the "Guarantor" promised to pay. Insisting that this reading is reasonable, but acknowledging that the plaintiff's alternate reasoning also is reasonable, Carnago contends that the language in paragraph 16 is ambiguous, so summary judgment cannot be granted. Finally, Carnago argues that the "Determination Date" that fixes the amount of the limited guarantor's liability should float, so that the limited guarantor's obligation can be no more than 50% of the loan balance at any particular time. Consequently, he reasons, his liability should be calculated on a date *after* Moceri made his settlement payment, reducing Carnago's exposure to no more than $625,000.

These arguments are unconvincing for several reasons. First, Carnago's view that the use of the singular term "Guarantor" means that the liability of all signatories on the limited guaranty must be collective ignores another provision in that document. Paragraph 9 of the limited guaranty states:

9. **RULES OF CONSTRUCTION** .... If this Guaranty is executed by more than one person, the term "Guarantor" shall include all such persons. When the context and construction so require, all words used in the singular herein shall be deemed to have been used in the plural and vice versa.

Mot. Summ. J., Ex. D, Limited Repayment Guaranty, ¶ 9. Accepting the defendant's argument that the plaintiff intended to limit liability by using the term "Guaranty" in the singular reads paragraph 9 out of the contract. But under Michigan law, a contract must be read as a whole. *Roberts v. Titan Ins. Co. (On Reconsideration)*, 282 Mich.App. 339, 357, 764 N.W.2d 304, 315 (2009). A court should avoid an interpretation of a contract that renders any part of the contract surplusage or nugatory. *Laurel Woods Apartments v. Roumayah*, 274 Mich.App. 631, 638, 734 N.W.2d 217, 220 (2007). Applying the rule of construction prescribed in paragraph 9, paragraph 16 must be read to state that the liability of each of the signatory guarantors is individual, not collective.

Second, the plain language of paragraph 16 states that "each of the undersigned" is liable for up to 50% of the principal amount. This phrase can refer only to separate signatories and not to a collective "unity" of signatories comprising the Guarantor, as the defendant suggests. The language "fairly admits of but one interpretation," *Allstate Ins. Co. v. Goldwater*, 163 Mich.App. 646, 648–49, 415 N.W.2d 2, 4 (1987), that each signatory's liability is distinct from the other signatories' and each signatory bears individual responsibility for up to one-half of the loan principal when it becomes due.

Third, although the date liability becomes fixed is not specified in the guaranty, paragraph 16 plainly sets forth how that date is determined: "as determined by Lender in writing." Compl., Ex. 4, Limited Repayment Guaranty, ¶ 16. That date is denominated as the "Determination Date." The lender's discretion in setting that date is not unfettered; the agreement states that the Determination Date may "not [be] sooner than the date the indebtedness becomes due and payable, whether by acceleration or otherwise." *Ibid.* In this case, the undisputed facts show that the lender established the determination date as March 19, 2009, when the plaintiff declared the borrower in default for failing to make a $500,000 principal payment due February 1, 2009 and the loan balance was accelerated. There is no evidence that any other "Determination Date" was ever specified by the "Lender in writing." And there is no support for the argument that the limited guarantor's liability should be redetermined after Dominic Moceri entered into and fulfilled his settlement agreement.

Finally, defendant Carnago has not refuted Christopher Chapman's calculation of damages. Chapman stated in his supplemental affidavit that the limited guarantor's obligation is as follows:

| | |
|---|---|
| Principal Amount | $1,250,000.00 |
| Accrued Interest from 3/1/09 through 3/18/09: | $ 2,031.25 |
| Accrued Interest from 3/19/09 through 3/30/10: | $ 107,994.79 |
| Total Due (exclusive of attorney's fees/costs) | $1,360,026.24 |

Suppl. aff. of Chapman ¶ 10. The plaintiff is entitled to summary judgment against defendant Gerald Carnego in that amount.

III.

This decision on the plaintiff's motion for summary judgment disposes of all of the

plaintiff's claims against all the remaining defendants. However, the defendants have filed cross-claims against each other for indemnity and contribution, and therefore the order disposes of fewer than all of the claims. Federal Rule of Civil Procedure 54(b) states that "[w]hen an action presents more than one claim for relief ..., the court may direct entry of a final judgment as to one or more, but fewer than all, claims ... only if the court expressly determines that there is no just reason for delay." The commentary explains that the rule "was originally adopted ... to avoid the possible injustice of a delay in judgment of a distinctly separate claim to await adjudication of the entire case." Commentary, 1946 amend. The Court believes this is such a case.

■■■■ A final judgment may not be entered on fewer than all claims in a case unless that judgment "entirely resolve[s]" an individual claim, and there is "no just reason for delay." *Lowery v. Fed. Exp. Corp.*, 426 F.3d 817, 821 (6th Cir.2005). The plaintiff's complaint for damages on the unpaid note against the maker and guarantors amounts to a single " 'claim' under Rule 54(b)[, which is] 'the aggregate of operative facts which give rise to a right enforceable in the courts.' " *Ibid.* (citing *McIntyre v. First Nat'l Bank of Cincinnati*, 585 F.2d 190, 192 (6th Cir.1978)). It is administratively proper to enter final judgment when " 'the needs of the parties' outweigh the efficiency" of maintaining the lawsuit as a cohesive whole, *Lowery*, 426 F.3d at 822 (citing *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 443 (6th Cir.2004)), and after considering the "judicial administrative interests as well as the equities involved," *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). The outcome of the cross-claims would not affect the validity of the judgment on the plaintiff's claim, nor would that outcome obviate the need for review (if any) of the main action by the plaintiff. There is no likelihood that the disposition of the cross-claims would result in a setoff of the defendants' liability to the plaintiff. Finally, delay could affect adversely the plaintiff's chances of collecting on its judgment from solvent defendants. *See Lowery*, 426 F.3d at 822 (discussing factors) (citing *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1030 (6th Cir.1994)).

### IV.

The Court finds that the plaintiff is entitled to a judgment as a matter of law against the general guarantors and the remaining limited guarantor for the outstanding balances set forth herein. Moreover, there is no just reason for delaying the entry of a final judgment on the plaintiff's claim.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment [dkt # 57] is **GRANTED.**

It is further **ORDERED** that the plaintiff shall recover from defendants Dominic J. Moceri, Francis V. Moceri, Mariano Moceri, Peter K. Burton, Robert M. Katzman, Laurence R. Goss, Steven Bentley, Salvatore J. Palazzolo, Sebastian D. Palazzolo, and Gregory A. Carnago, jointly and severally, the sum of $1,431,666.67.

It is further **ORDERED** that the plaintiff shall recover from defendant Gerald Carnago the sum of $1,360,026.24.

It is further **ORDERED** that final judgment shall enter under Federal Rule of Civil Procedure 54(b) against defendants MPC Investors, Inc., Dominic J. Moceri, Francis V. Moceri, Mariano Moceri, Peter K. Burton, Robert M. Katzman, Laurence R. Goss, Steven Bentley, Salvatore J. Palazzolo, Sebastian D. Palazzolo, Gregory A. Carnago, and Gerald Carnago on the plaintiff's claims.

It is further **ORDERED** that cross-plaintiffs Gregory A. Carnago and Gerald Carnago and cross-defendants Laurence R. Goss, Steven Bentley, Salvatore J, Palazzolo, Sebastian D. Palazzolo, Peter K. Burton, and Robert M. Katzman shall appear through counsel for a status conference on **May 17, 2010 at 12:00 p.m.** to establish case deadlines to resolve the cross-claims. Counsel for the plaintiff need not attend.