JOHN HANCOCK PROPERTY AND CASUALTY
INSURANCE COMPANIES v BLUE CROSS &
BLUE SHIELD OF MICHIGAN

EMPLOYERS MUTUAL INSURANCE COMPANIES v
AMERICAN COMMUNITY MUTUAL INSURANCE COMPANY
(ON RECONSIDERATION)

Docket Nos. 87342, 89534. Argued December 6, 1990 (Calendar Nos.
11-12). Decided June 24, 1991.

John Hancock Property and Casualty Insurance Companies
brought an action in the Wayne Circuit Court against Blue
Cross & Blue Shield of Michigan, seeking to recover medical
expenses paid pursuant to the coördination of benefits provision
of the no-fault act, § 3109a, on behalf of Anna Heinsman, a
Medicare enrollee, who was injured in an automobile accident.
The court, J. Phillip Jourdan, J., granted summary disposition
for the plaintiff, finding that *Federal Kemper Ins Co, Inc v
Health Ins Administration, Inc,* 424 Mich 537 (1986), requires
health insurers to reimburse automobile insurers for medical
expenses where the automobile insurance was coördinated
pursuant to § 3109a. The Court of Appeals, DOCTOROFF, P.J.,
and MAHER and REILLY, JJ., affirmed (Docket No. 106711).

Employers Mutual Insurance Companies brought an action in the
Wayne Circuit Court against American Community Mutual
Insurance Company, seeking recovery of medical expenses paid
pursuant to § 3109a of the no-fault act on behalf of James Ford,
a Medicare enrollee, who was injured in an automobile acci-
dent. The court, Patrick J. Duggan, J., granted summary dispo-
sition for the plaintiff. The Court of Appeals, CYNAR, P.J., and
HOOD and MURPHY, JJ., affirmed in an opinion per curiam,
holding that Medicare constitutes "other health and accident
coverage" within the meaning of § 3109a and declared that 42
USC 1395y(b)(2)(A) does not mandate that Medicare be second-
ary to no-fault benefits (Docket No. 98077).

The health care insurers appeal the question whether they

REFERENCES

Am Jur 2d, Insurance § 1789.
See the Index to Annotations under Health and Accident Insur-
ance.

are primarily liable where the insurance coverage is not basic, comprehensive health care coverage, but rather coverage supplementing Medicare benefits.

In an opinion by Justice LEVIN, joined by Chief Justice CAVANAGH and Justices BRICKLEY, BOYLE, RILEY, and GRIFFIN, the Supreme Court *held:*

A health insurer has no liability to an insured to pay medical expenses resulting from an automobile accident where the health insurance coverage is limited to supplementing benefits provided by Medicare.

1. *Federal Kemper* held that where a person incurs medical expense as a result of an automobile accident and is covered by both automobile no-fault insurance and basic, comprehensive health insurance, the health insurer is primarily liable for the payment of the medical expense if the automobile insurance was coördinated with the health insurance pursuant to MCL 500.3109a; MSA 24.13109(1). However, 42 USC 1395y(b)(2)(A) allocates to automobile insurers the primary burden of paying medical expenses arising out of automobile accidents of persons covered by Medicare. Section 3109a of the no-fault act does not reallocate that burden to health insurers. In these cases, the supplemental coverages did not provide basic, comprehensive health care coverage, but rather filled particular gaps, but not every gap, in Medicare coverage. Nothing in the policies indicates that coverage is provided to fill the gap in Medicare coverage created by 42 USC 1395y(b)(2)(A) that allocated the primary burden of paying medical expense respecting automobile accidents to automobile insurers. Coverage under the policies simply is not initiated unless Medicare coverage is initiated.

2. Medicare is the primary health care provider for persons eligible for Medicare, not health insurers such as the defendants. *Federal Kemper* does not oblige a supplemental health care insurer to pay medical expenses resulting from automobile accidents simply because the burden otherwise would be imposed on an automobile insurer. Thus, persons eligible for Medicare who have only supplemental health care coverage will not be able to purchase automobile insurance at the reduced cost for coördination with health care insurance. Because Medicare no longer pays for medical expenses arising out of automobile accidents where there is automobile insurance coverage of such expense, a person eligible for Medicare benefits who owns an automobile is obliged to pay the premium cost of providing for medical expense arising out of automobile accidents either to an automobile or to a health care insurer.

3. The defendant health insurers are not required to reim-

burse the plaintiff no-fault insurers for medical expense paid as a result of automobile accidents.

Reversed.

Justice MALLETT took no part in the decision of this case.

180 Mich App 242; 446 NW2d 883 (1989) reversed.

175 Mich App 643; 438 NW2d 275 (1989) reversed.

INSURANCE — MEDICARE — NO-FAULT — COÖRDINATION OF BENEFITS — HEALTH CARE.

    A health insurer has no liability to an insured to pay medical expenses resulting from an automobile accident where the health insurance coverage is limited to supplementing benefits provided by Medicare (42 USC 1395y[b][2][A]; MCL 500.3109a; MSA 24.13109[1]).

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *John P. Seyfried* and *Daniel S. Saylor*), for the plaintiff in *Hancock.*

*James Howard Turner* for the plaintiff in *Employers Mutual.*

*Foster, Swift, Collins & Smith, P.C.* (by *Brian A. Kaser* and *Theodore W. Swift*), for the defendant in *Hancock.*

*Miller, Canfield, Paddock & Stone* (by *Kevin J. Moody, Clifford T. Flood* and *Lawrence D. Owen*) for the defendant in *Employers Mutual.*

Amicus Curiae:

*Honigman, Miller, Schwartz & Cohn* (by *John D. Pirich* and *Timothy Sawyer Knowlton*) for the Health Insurance Association of America.

LEVIN, J. In *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537; 383 NW2d 590 (1986), this Court held that where a person incurs medical expense as a result of an

automobile accident and is covered by both automobile no-fault insurance and basic, comprehensive health insurance, the health insurer is primarily liable for the payment of the medical expense if the automobile insurance was coördinated with the health insurance pursuant to § 3109a of the no-fault act.[1]

In the instant cases, in contrast with *Kemper,* the health insurers did not provide basic, comprehensive, health care coverage, but rather coverage supplementing the benefits provided by Medicare, sometimes referred to as Medigap insurance.

We hold that a health insurer has no liability to the insured for medical expense respecting an automobile accident where the health insurance coverage is limited to supplementing benefits provided by Medicare, and therefore defendant health insurers are not required to reimburse plaintiff no-fault automobile insurers for medical expense they paid respecting automobile accidents.

I

Anna Heinsman was injured in an automobile accident in November, 1985. James Ford was injured in an automobile accident in May, 1984. Both were covered by policies of no-fault automobile insurance issued in coördination with their health insurance pursuant to § 3109a. Heinsman's automobile insurer was John Hancock Property and Casualty Insurance Companies. Ford's was Employers Mutual Insurance Companies. John Hancock paid Heinsman's medical expense, and Employers Mutual paid Ford's. Plaintiff no-fault automobile insurers seek to recover therefor from defendant health insurers.

---

[1] MCL 500.3109a; MSA 24.13109(1).

A

Heinsman was covered by a group health insurance policy issued by Blue Cross & Blue Shield of Michigan, which provided basic, comprehensive health insurance for persons in the group who were not eligible for Medicare, and insurance supplementing Medicare benefits for those who were eligible for Medicare. At the time of the accident, Heinsman was eligible for and enrolled in the Medicare program, and thus was provided, under the BCBSM group policy, with insurance supplementing Medicare benefits and not with basic, comprehensive health insurance.

Ford was covered by a group health insurance plan issued by American Community Mutual Insurance Company, which provided basic, comprehensive health insurance for persons in the group who were not eligible for the Medicare program, and insurance supplementing Medicare benefits for those who were eligible for Medicare. At the time of the accident Ford was eligible for and enrolled in the Medicare program, and thus similarly was provided, under the Employer's Mutual group policy, with insurance supplementing Medicare benefits and not with basic, comprehensive health insurance.

B

John Hancock commenced an action against BCBSM, and Employers Mutual commenced an action against American Community, to recover the medical expense they had paid to or for Heinsman and Ford. They contend that *Federal Kemper,* and the policies underlying *Federal Kemper,* oblige health insurers to reimburse no-fault automobile insurers for medical expense where the no-fault

automobile insurance was issued on a coördinated basis.

The circuit court agreed, and the Court of Appeals affirmed.

II

A federal statute provides that Medicare benefits are not payable where the medical expense is covered under an automobile insurance policy or plan or under no-fault insurance.[2] The federal statute thus allocates to automobile insurers the primary burden of paying the medical expense, arising out of automobile accidents, of persons covered by the Medicare program.

We conclude that § 3109a of the no-fault act does not reallocate that burden to health insurers, and reverse the judgment of the Court of Appeals.

_____

[2] The following was enacted as part of the Omnibus Budget Reconciliation Act of 1980:

> (2) Medicare secondary payer
> (A) In general
> Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—
> (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or
> (ii) payment has been made, or can reasonably be expected to be made promptly (as determined in accordance with regulations) under a workmen's compensation law or plan of the United States or a State *or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.*
> In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. [42 USC 1395y(b); 70A Am Jur 2d, Social Security and Medicare, § 1218, p 849. Emphasis added.]

A

In *Employers Mutual,* the Court of Appeals panel rejected American Community's claim "that federal law requires that Medicare be secondary to no-fault insurance and that *Federal Kemper* is inapplicable" where the health insurance coverage is provided under a Medicare supplemental policy, rather than under a basic, comprehensive health insurance policy.[3] The Court, concluded, rather, that Medicare constitutes "other health and accident coverage within the meaning of § 3109a";[4] the Court said that in *Federal Kemper* this Court had indicated that the Court's decision in that case "would further the legislative intent of § 3109a by containing auto insurance and health costs, eliminating duplicate recovery and vesting in the insured the option of coördinating benefits."[5]

The Court declared that the federal statute, providing that Medicare benefits are not payable where there is no-fault coverage for medical expense, does not "mandate that Medicare be secondary to no-fault benefits" because, under *Federal Kemper,* "no-fault insurance is secondary to other health coverage," and "[t]herefore, payment by no-fault insurance cannot" "reasonably be expected to

---

[3] 175 Mich App 643, 644; 438 NW2d 275 (1989).

[4] The Court of Appeals cited *Lewis v Transamerica Ins Corp of America,* 160 Mich App 413, 419; 408 NW2d 458 (1987), which relied on this Court's decision in *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173, 205; 301 NW2d 775 (1981).

However, Congress, in 1980 (see n 2), amended a relevant federal statute, explicitly making Medicare secondary to automobile insurance where it is available. The 1980 legislation was not in issue in *LeBlanc.*

Since Medicare is no longer payable where the medical expense is covered under an automobile insurance policy or plan or under no-fault insurance, Medicare does not any longer constitute other health and accident coverage within the meaning of § 3109a.

[5] *Employers Mutual,* n 3 *supra,* p 645.

be made promptly,"[6] and the federal statute re-
lieves the Medicare program of the obligation to
provide Medicare benefits only where the pay-
ments under the state program can "reasonably be
expected to be made promptly."[7]

## B

The Court of Appeals panel in *John Hancock,* in
contrast with the *Employers Mutual* panel, said
"that the holding of *Federal Kemper* was limited
to priorities between competing 'first dollar' insur-
ers," and agreed with BCBSM "that supplemental
health care coverage is different from the basic,
comprehensive health care coverage considered in
*Federal Kemper.* Supplemental insurance is com-
plementary, and is not to be construed to be a
substitute for the underlying comprehensive cover-
age. The liability of the supplemental insurer
should not exceed the liability assumed in the
policy."
The Court ruled, however, that BCBSM had "as-
sumed" a greater liability and had *agreed* to pro-
vide "full health care coverage to Heinsman, and
not merely supplemental Medicare coverage."[8]

## III

The BCBSM policy spells out precisely the cover-
age provided for persons in the group who are
eligible for Medicare and who, under the terms of
the group policy, no longer have basic, comprehen-
sive health care coverage. In essence, if a member
of the group is eligible for Medicare, BCBSM will

---

[6] The Court of Appeals so declared although Employers Mutual had
promptly paid the no-fault benefits.

[7] *Employers Mutual,* n 3 supra, p 646.

[8] 180 Mich App 242, 245; 446 NW2d 883 (1989).

pay the deductible and copayment amount, or the difference between what Medicare pays and the medical expense, within limitations spelled out in the policy.[9] In exchange for this reduced coverage, members of the group eligible for Medicare pay premiums that are about half of what they would otherwise pay for full health coverage.

[9] The policy provides:

If the Subscriber or member is or has at any time been eligible for Medicare, the Plan will pay as follows whether or not the subscriber or member is or has enrolled in Medicare:

a. For hospital services rendered to a bed patient in a hospital, the Plan will pay the deductible and copayment amount for the number of days allowed under Medicare and will provide benefits for any additional days as otherwise provided by this contract.

b. For hospital services rendered in the outpatient department of a hospital, the Plan will pay the difference between the amount that Medicare pays and ninety percent (90%) of the hospital charge but never less than the amount of the deductible and copayment required under Medicare.

c. For skilled nursing facility services rendered to a bed patient in a skilled nursing facility, the Plan will pay the deductible and copayment amount for the number of days allowed under Medicare up to a maximum of 100 days.

d. For services enumerated as other medical expenses in Section II c where the provider or physician accepts the Medicare reimbursement as payment in full, with respect to inpatient services the Plan will pay the deductible and copayment required under Medicare, and with respect to outpatient services the Plan will pay the difference between the amount that Medicare pays and ninety percent (90%) of the Medicare reasonable charge but never less than the amount of the deductible and copayment required under Medicare.

e. For services enumerated as other medical expenses in Section II c where the Medicare claim is non-assigned, with respect to inpatient services, the Plan will pay the difference between the amount that Medicare pays and the reasonable charge as determined by the Plan, and with respect to outpatient services, the Plan will pay the difference between the amount that Medicare pays and ninety percent (90%) of the reasonable charge as determined by the Plan but in no case less than the deductible or copayment required by Medicare.

f. For outpatient mental health services the liability of the Plan shall cease when the aggregate benefits provided by Medicare and the Plan reach the amount of value of five hundred ($500) dollars per member per calendar year.

The American Community policy similarly provides for limited coverage supplementing Medicare benefits for a reduced premium.[10] Thus, neither BCBSM nor American Community have undertaken to pay whatever medical expense the insured may incur that is not covered by Medicare.

The defendant health insurers acknowledge that *Federal Kemper* governs where the injured person is covered by a policy of no-fault automobile insurance coördinated with basic, comprehensive health care coverage. BCBSM and American Community are, thus, the primary insurers for those persons who are covered with basic, comprehensive health care coverage under the group policies.

The supplemental coverages written for Heinsman and Ford, in contrast with the health insurance coverage dealt with in *Federal Kemper,* did not provide basic, comprehensive health care coverage. The supplemental coverages filled particular gaps, not every gap, in Medicare coverage. Nothing in the language providing supplemental coverage indicates that coverage is provided to fill the gap in Medicare coverage created in 1980[11] by the amendment of the federal statute that allocated the primary burden of paying medical expense respecting automobile accidents to automobile insurers.

Section 3109a, in speaking of "other health and accident coverage," comprehended duplicative health care coverage—health insurance that would, but for a proviso in the health insurance

[10] The Court of Appeals said:

Ford was also covered by a Medicare supplemental policy issued by defendant in accordance with the Medicare supplemental provisions of the Insurance Code, MCL 500.2264a-500.2279; MSA 24.12264(1)-24.12279. [175 Mich App 644.]

[11] See n 2.

policy excluding coverage to the extent there is coverage under an automobile insurance policy, pay for some or all the medical expense of an automobile accident. *Federal Kemper* held that such an exclusion, in a health care policy, otherwise providing basic, comprehensive health care coverage, was contrary to the legislative policy expressed in § 3109a to make health insurance primary if the person who purchases automobile insurance elects to coördinate with such health insurance in return for a reduction in the cost of no-fault automobile insurance.

The supplemental policies written by American Community and BCBSM did not provide for payment of some or all the medical expense of automobile accidents *but for* provisos written into the policies by the insurers *excluding* coverage for automobile accidents. Coverage for the medical expense of automobile accidents was excluded under these policies, not because of an exclusion for automobile accidents of coverage otherwise applicable under the policies, but, rather, because Medicare does not provide coverage for automobile accident medical expense covered by automobile insurance and these policies, only supplementing Medicare, were not written to fill that particular gap in the federal program. Coverage under these policies supplementing Medicare simply is not triggered unless Medicare coverage is triggered first.

IV

Employers Mutual and John Hancock contend that the policies underlying *Federal Kemper* require that American Community and BCBSM expand the coverage of the policies written by them for persons eligible for Medicare to provide basic, comprehensive health care coverage respecting

automobile accidents even though they do not otherwise provide such coverage, and instead provide only supplemental coverage respecting any other medical needs of the insured, because Medicare is the provider of basic, comprehensive health care coverage for other medical needs of such persons. Employers Mutual and John Hancock assert that American Community and BCBSM must fill the automobile accident insurance gap in the Medicare coverage so that persons eligible for Medicare will be able to purchase automobile insurance coördinated with health insurance at a reduced cost in their automobile insurance premiums.

It is again relevant that Medicare is the primary health care provider for persons eligible for Medicare, not health insurers such as American Community and BCBSM. *Federal Kemper* concerned only an effort of a primary health insurer to avoid the operative effect of § 3109a, and held only that such an insurer is primary as between the no-fault automobile insurer and the health insurer. *Federal Kemper* does not oblige a supplemental health care insurer to bear that burden simply because the burden would otherwise be imposed on the no-fault automobile insurer, with the result that persons eligible for Medicare who have only supplemental health care coverage will not be able to purchase no-fault automobile insurance at the reduced cost for coördination with health care insurance.

Because Medicare no longer pays for medical expense arising out of an automobile accident where there is automobile insurance coverage of such expense, a person eligible for Medicare benefits who owns an automobile is obliged to pay the premium cost of providing for medical expense arising out of an automobile accident either to an

automobile or a health care insurer. Both the automobile and the health insurers assert that a ruling in favor of the other will unfairly burden persons eligible for Medicare. How that plays out in particular cases or at large depends on a host of complex considerations. There is no record in that regard, merely competing allegations. In all events, that is not a relevant consideration to our disposition of this controversy.

v

As previously set forth, the Court of Appeals panel in *John Hancock* agreed with the view here expressed that, as expressed by that panel, "[t]he liability of the supplemental insurer should not exceed the liability assumed in the policy."[12] The panel, nevertheless, ruled that John Hancock, the no-fault insurer, could recover from BCBSM on the basis of the "Exclusions and Limitations" provision in the BCBSM policy. The panel read this provision, stating that BCBSM is *not* obliged to pay benefits for " '[a]ny services to the extent for which benefits are payable[ ] under Medicare,' " as requiring BCBSM to pay for medical expense incurred in respect to an automobile accident.[13]

The Court of Appeals panel in *John Hancock*

---

[12] *John Hancock, supra,* p 245.

[13] The Court reasoned that the "exclusion provision" would apply only *if* Medicare benefits were "payable." Since Medicare benefits were not "payable" because the federal statute (see n 2) provides that Medicare benefits will *not* be paid with respect to any item or service covered by no-fault insurance, the "exclusion provision" did not become operative. BCBSM thus remained obligated to provide Heinsman with full health care coverage.

The result should not be different, said the Court, because *Federal Kemper* "permits the no-fault insurer to later recoup its payment to the insured from the health insurer . . . ." The Court concluded that BCBSM had thus *agreed* and was obliged, under the *terms of the BCBSM policy,* entirely apart from § 3109a, to provide Heinsman "with full health care coverage and not merely supplemental Medicare coverage." *Id.,* pp 246-247.

misread a limitation on BCBSM's coverage as enlarging the coverage. In stating that benefits are not available for any service to the extent for which benefits *are payable* under Medicare, BCBSM did not *agree* to pay for any service to the extent for which benefits are *not payable* under Medicare.

Reversed.

CAVANAGH, C.J., and BRICKLEY, BOYLE, RILEY, and GRIFFIN, JJ., concurred with LEVIN, J.

MALLETT, J., took no part in the decision of this case.