*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH CANTY,

Plaintiff-Appellee,

v

MICHAEL CHESTER MASON,

Defendant-Appellant.

FOR PUBLICATION
October 04, 2024
1:14 PM

No. 365327
Wayne Circuit Court
LC No. 21-004799-NI

Before: MARKEY, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

In 2019, the Michigan Legislature made sweeping changes to the no-fault act, MCL 500.3101 *et seq.*, through the enactment of 2019 PA 21 and 2019 PA 22. This appeal requires us to construe the interplay between several statutory provisions that were subject to amendment. Plaintiff, Joseph Canty, seeks to recover medical expenses incurred to treat injuries allegedly sustained in a motor-vehicle accident involving defendant, Michael Chester Mason. In pursuing the action, Canty is relying on the tort exception found in MCL 500.3135(3)(c), allowing recovery of "allowable expenses" by persons who elect not to maintain personal protection insurance (PIP) coverage under their automobile insurance policies. Canty was permitted to make that election because he has Medicare coverage; however, it was not used to pay for any of his accident-related medical expenses. Mason moved for partial summary disposition under MCR 2.116(C)(10), arguing that Canty's medical expenses had to be reasonable under MCL 500.3107(1)(a), that Canty had a duty to mitigate his damages by employing his Medicare coverage to pay the medical bills, and that the no-fault fee schedules in MCL 500.3157 apply to a suit brought under MCL 500.3135(3)(c). The trial court granted in part and denied in part Mason's motion for summary disposition. The court concluded that Canty's allowable medical expenses had to be reasonable, that he had no duty to mitigate damages by using his Medicare coverage, and that the fee schedules were inapplicable. Mason appeals by leave granted. We affirm in part and reverse in part.

## I. BACKGROUND

This case arose out of an automobile accident that occurred in February 2021. Canty filed a complaint against Mason, alleging that Mason negligently caused the accident by, in part,

-1-

traveling too fast for conditions and failing to maintain proper distance, which resulted in Mason's vehicle skidding and rear-ending Canty's car. Canty alleged that he sustained physical injuries in the accident and, as a result, incurred medical expenses for treatment rendered by healthcare providers. Canty asserted that he had a statutory right to recover those expenses from Mason under MCL 500.3135(3)(c), which provides, in pertinent part:

> (3) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(1) was in effect is abolished except as to:
>
> * * *
>
> (c) Damages for allowable expenses, work loss, and survivor's loss *as defined in sections 3107 to 3110*, including all future allowable expenses and work loss, in excess of any applicable limit under section 3107c or the daily, monthly, and 3-year limitations contained in those sections, *or without limit for allowable expenses if an election to not maintain that coverage was made under section 3107d* or if an exclusion under section 3109a(2) applies. . . . . [Emphasis added.[1]]

Canty was covered by an automobile insurance policy; however, he had "elect[ed] to not maintain coverage for [PIP] benefits payable under section 3107(1)(a)." MCL 500.3107d(1).[2] He was able to do so because he otherwise had "qualified health coverage," MCL 500.3107d(1), in the form of "parts A and B of the federal Medicare program," MCL 500.3107d(7)(b)(*ii*). We note that "[b]enefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the [PIP] benefits otherwise payable for the injury under this chapter." MCL 500.3109(1). Additionally, relevant to this case and appeal, MCL 500.3157 contains fee schedules that limit a medical provider's reimbursement amount.

Subsequently, Mason moved for partial summary disposition under MCR 2.116(C)(10). He argued that the "without limit" nomenclature used in MCL 500.3135(3)(c) does not mean that there are no limits on Canty's recovery of allowable expenses.[3] Rather, the medical charges had to be reasonable and incurred for reasonably necessary services so as to be in compliance with the definition of "allowable expenses" in MCL 500.3107(1)(a), which provision is incorporated by express reference in MCL 500.3135(3)(c). Further, Mason contended that Canty and his healthcare providers had a duty to mitigate damages by utilizing Canty's Medicare coverage,

---

[1] We note that Canty also alleged a claim for noneconomic damages, asserting that he suffered a serious impairment of body function as a result of the accident. See MCL 500.3135(1) and (5).

[2] MCL 500.3107(1)(a) provides that PIP benefits are payable for, in part, "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

[3] Mason posited that the phrase "without limit" in MCL 500.3135(3)(c) simply references the fact that there is no PIP coverage limit to exhaust before seeking damages from a tortfeasor, and not that an injured party is entitled to unlimited expenses from the tortfeasor.

-2-

which was not done. Mason maintained that Canty treated with many providers who accepted Medicare, yet Medicare was not billed for the services, nor were Medicare rates charged for the care and treatment. Mason asked the trial court to dismiss all claims for which Canty did not attempt to bill Medicare. He additionally argued that any recovery of allowable expenses is subject to the fee schedules in MCL 500.3157. In response, on the issue of mitigation, Canty argued that MCL 500.3135(3)(c) did not restrict his choice of medical providers, nor did it require him to submit claims to Medicare for purposes of his cause of action. Moreover, according to Canty, MCL 500.3135(3)(c) allows recovery "without limit" and does not reference or otherwise incorporate MCL 500.3157, thereby excluding application of the fee schedules.

Eventually, at a hearing to settle an order regarding a ruling made by the trial court from the bench on Mason's motion for summary disposition, the court entertained further argument on the motion and partially altered its prior ruling, which we need not explore. The trial court now ruled that Canty had no duty to mitigate damages or expenses "because Medicare and Medicaid are exempt from the no fault statute." The court further determined that Canty had to show that the charges by his medical providers were reasonable and necessary under MCL 500.3107(1)(a)'s definition of "allowable expenses." Thus, the charges and expenses were not without some limit. But the trial court also found that the fee schedules in MCL 500.3157 do not apply to Canty's action brought under MCL 500.3135(3)(c). The court entered an order granting in part and denying in part Mason's motion for summary disposition. Mason appeals by leave granted. *Canty v Mason*, unpublished order of the Court of Appeals, entered August 28, 2023 (Docket No. 365327).

II. ANALYSIS

A. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Champine v Dep't of Transp*, 509 Mich 447, 452; 983 NW2d 741 (2022). This Court also reviews de novo issues of statutory construction. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). De novo review "means that we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019).

B. SUMMARY DISPOSITION PRINCIPLES – MCR 2.116(C)(10)

In *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506-507; 991 NW2d 230 (2022), this Court recited the principles that govern the analysis of a motion brought pursuant to MCR 2.116(C)(10):

MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on

the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party. Speculation is insufficient to create an issue of fact. A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. [Quotation marks, citations, and brackets omitted.]

## C. RULES OF STATUTORY CONSTRUCTION

With respect to the rules of statutory interpretation, this Court in *Slis v Michigan*, 332 Mich App 312, 335-336; 956 NW2d 569 (2020), observed:

This Court's role in construing statutory language is to discern and ascertain the intent of the Legislature, which may reasonably be inferred from the words in the statute. We must focus our analysis on the express language of the statute because it offers the most reliable evidence of legislative intent. When statutory language is clear and unambiguous, we must apply the statute as written. A court is not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature. Furthermore, this Court may not rewrite the plain statutory language or substitute its own policy decisions for those decisions already made by the Legislature.

Judicial construction of a statute is only permitted when statutory language is ambiguous. A statute is ambiguous when an irreconcilable conflict exists between statutory provisions or when a statute is equally susceptible to more than one meaning. When faced with two alternative reasonable interpretations of a word in a statute, we should give effect to the interpretation that more faithfully advances the legislative purpose behind the statute. [Quotation marks and citations omitted.]

## D. DISCUSSION AND RESOLUTION

Abiding by the plain and unambiguous language of the various statutory provisions implicated in this case and the uncontroverted caselaw on mitigation of damages, we conclude that

resolution of this appeal is fairly straightforward. With respect to MCL 500.3135(3)(c), an injured person with standard PIP coverage under a no-fault insurance policy *and* an injured person who elected not to maintain such coverage and instead had a qualified-health-coverage (QHC) plan can both recover damages in a traditional tort action for "allowable expenses" as defined in MCL 500.3107 to MCL 500.3110. A distinction between these two individuals is that the person carrying PIP coverage under a no-fault policy is limited to recovering only amounts in "excess of" certain statutory limitations on the payment of PIP benefits, but recovery of allowable expenses by a person who elected not to maintain PIP coverage is "without limit." MCL 500.3135(3)(c). We conclude that the "without limit" language of MCL 500.3135(3)(c) cannot be construed to mean that there are no parameters whatsoever on the amount of recovery. Rather, the "without limit" phrase, when read in context, simply means that the recovery of allowable expenses does not solely encompass amounts in excess of the statutory limitations, as is the case with respect to a party pursuing a tort action after no more PIP benefits are available under a no-fault policy because the statutory limitations on coverage were met or exhausted. In other words, a person in Canty's shoes who elected not to have PIP coverage through an auto insurance policy can recover *dollar one* in allowable expenses from the tortfeasor.[4] The "without limit" terminology in MCL 500.3135(3)(c) cannot be viewed in a vacuum, and the grammatical structure of Subsection (3)(c) supports our interpretation of the provision.

Furthermore, under MCL 500.3135(3)(c), the "allowable expenses" available to Canty, if successful in his tort action, are those defined in MCL 500.3107 to MCL 500.3110. And, as noted earlier, under MCL 500.3107(1)(a), "allowable expenses" are defined as "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."[5] We therefore conclude that the trial court properly ruled that MCL 500.3107(1)(a) limits any recovery by Canty under MCL 500.3135(3)(c) to those expenses that were reasonable and that were for reasonably necessary services.[6]

The next issue posed in this case is whether the fee schedules in MCL 500.3157 apply to a tort action under MCL 500.3135(3)(c). MCL 500.3135(3)(c), while referencing and incorporating MCL 500.3107 to MCL 500.3110, makes no express mention of MCL 500.3157. But the introductory or prefatory language of MCL 500.3107(1) states that the provisions found within the statute, which includes the definition of "allowable expenses," are "[s]ubject to the exceptions and limitations in this chapter[.]" And that chapter is Chapter 31 of the Insurance Code of 1956, MCL 500.100 *et seq*. Chapter 31 encompasses MCL 500.3157; therefore, MCL 500.3135(3)(c), by incorporating MCL 500.3107, necessarily also incorporates the fee schedules in MCL 500.3157,

---

[4] This proposition is subject to our holding regarding the duty to mitigate damages.

[5] Our Supreme Court has "recognized that the plain language of this provision imposes four requirements that a . . . claimant must prove before recovering benefits for allowable expenses: (1) the expense must be for an injured person's care, recovery, or rehabilitation, (2) the expense must be reasonably necessary, (3) the expense must be incurred, and (4) the charge must be reasonable." *Douglas v Allstate Ins Co*, 492 Mich 241, 259; 821 NW2d 472 (2012).

[6] There are additional qualifiers, criteria, and exceptions in MCL 500.3107 to MCL 500.3110 for purposes of identifying allowable expenses that are recoverable under MCL 500.3135(3)(c).

making them applicable to this case. Accordingly, the trial court erred by ruling that the fee schedules cannot be applied to limit Canty's recovery.

Our concurring-dissenting colleague disagrees with our analysis and resolution of the issue concerning the fee schedules in MCL 500.3157. He argues that the Legislature did not expressly identify MCL 500.3157 in the language of the tort-damages provision, MCL 500.3135(3)(c); therefore, we should not construe MCL 500.3135(3)(c) as if the Legislature had done so. We respectfully disagree. The Legislature is presumed to be aware of and to have considered existing statutes when enacting new laws. See *Milne v Robinson*, 513 Mich 1, 18; 6 NW3d 40 (2024). We must thus assume that when the Legislature crafted MCL 500.3135(3)(c), which expressly references MCL 500.3107, it knew quite well that MCL 500.3107 placed restrictions on the amount of recoverable allowable expenses through limitations and exceptions found in Chapter 31, including the fee schedules. Effectively, the Legislature did indeed identify MCL 500.3157 as a statutory provision that is to be considered for purposes of setting tort damages under MCL 500.3135(3)(c).

The concurrence/dissent asserts that our interpretation disregards the legislatively-chosen range specifically targeted in MCL 500.3135(3)(c), i.e., MCL 500.3107 to MCL 500.3110, improperly expanding the range to incorporate all of Chapter 31, which the Legislature could have stated outright in MCL 500.3135(3)(c) had that been its intent. We again disagree. First, for the reasons discussed above, we conclude that if MCL 500.3157 is not taken into consideration, the plain and unambiguous language of MCL 500.3107(1) referencing Chapter 31, as incorporated by MCL 500.3135(3)(c), is not being honored and is, instead, rendered surplusage and nugatory. See *Empire Iron Mining Partnership v Tilden Twp*, 337 Mich App 579, 586; 977 NW2d 128 (2021) (in construing statutory language, every word should be given meaning, and we must avoid an interpretation that would render any part of a statute surplusage or nugatory). Moreover, folding Chapter 31 into the definition of "allowable expenses" does not implicate each and every provision in Chapter 31, but only those few that would restrict or limit the amount of allowable expenses, such as MCL 500.3157.

The concurrence/dissent also contends that the prefatory language of MCL 500.3107(1) that references Chapter 31 pertains to the availability of insurance or PIP benefits, while MCL 500.3135(3)(c) concerns the availability of tort damages. Therefore, the prefatory language is inapplicable in relation to MCL 500.3135(3)(c). But the same can be said with respect to the definition of "allowable expenses" in MCL 500.3107(1)(a): it regards the availability of insurance or PIP benefits, yet there is no dispute, and the concurrence/dissent agrees, that it also sets the parameters of tort damages available under MCL 500.3135(3)(c).[7]

_____

[7] We recognize that MCL 500.3107(1) limits the recovery of *PIP benefits* on the basis of any pertinent provisions in Chapter 31, but the prefatory language also necessarily places a limit on the calculation of recoverable *allowable expenses*. The recovery of PIP benefits encompasses the recovery of compensation to pay for allowable expenses; the two are inextricably intertwined. If an expense is not an allowable expense, one cannot recover PIP benefits in relation to that expense. We do not believe that there is a relevant distinction between PIP benefits and allowable expenses

The final question concerns mitigation of damages, which requires us to also consider the impact of the setoff language in MCL 500.3109(1). "Mitigation of damages is a legal doctrine that seeks to minimize the economic harm arising from wrongdoing." *Morris v Clawson Tank Co*, 459 Mich 256, 263; 587 NW2d 253 (1998). It is incumbent on a person who has been harmed by the commission of a tort to use such means that are reasonable under the circumstances to minimize or mitigate the amount of damages. *Id.* A person wronged by a tortfeasor is not entitled to recover for any item of damage that could have been avoided. *Id.* at 263-264.

This Court had held that because the no-fault act does not specifically abrogate the common-law principle that a plaintiff is obligated in a tort action to mitigate his or her damages, the defense remains viable. *Lee v Detroit Med Ctr*, 285 Mich App 51, 67; 775 NW2d 326 (2009); *Bak v Citizens Ins Co of America*, 199 Mich App 730, 737-738; 503 NW2d 94 (1993).[8] Moreover, and importantly, MCL 500.3135(3)(c) carves out an exception to the abolishment of tort liability arising from the ownership, maintenance, or use of a motor vehicle. Consequently, Canty's lawsuit *is a true tort action.* Thus, the doctrine of mitigation of damages is applicable.

We reject the trial court's finding or suggestion that Medicare benefits cannot be taken into consideration on the issue of mitigation of damages because such benefits were not available to cover Canty's medical expenses given that the case arises out of the no-fault act and Medicare is exempt from the act. In *John Hancock Prop & Cas Ins Cos v Blue Cross & Blue Shield of Mich*, 437 Mich 368, 373; 471 NW2d 541 (1991), the Michigan Supreme Court, citing 42 USC 1395y(b)(2)(A) (Medicare secondary payer), which is part of the Omnibus Reconciliation Act of 1980, stated:

> A federal statute provides that Medicare benefits are not payable where the medical expense is covered under an automobile insurance policy or plan or under no-fault insurance. The federal statute thus allocates to automobile insurers the primary burden of paying the medical expense, arising out of automobile accidents, of persons covered by the Medicare program.

In this case, Canty did not have PIP coverage for allowable medical expenses through an automobile insurance policy or no-fault insurance plan because he had healthcare coverage under parts A and B of Medicare, as expressly permitted by the Legislature under MCL 500.3107d(1) and (7)(b)(*ii*). The trial court's ruling circumvents the legislative goal of allowing motorists to opt out of PIP coverage where they have QHC through Medicare, leaving the motorist without any medical coverage for injuries sustained in a motor-vehicle accident. Accordingly, federal law did

___

for purposes of employing Chapter 31 in relation to calculating damages under MCL 500.3135(3)(c).

[8] The Supreme Court in *Marquis v Hartford Accident & Indemnity*, 444 Mich 638, 651; 513 NW2d 799 (1994), voiced its approval of the *Bak* decision on the mitigation-of-damages issue in the context of the no-fault act.

not prohibit Canty from receiving Medicare benefits for medical expenses incurred as a result of the accident.

Furthermore, MCL 500.3135(3)(c) incorporates MCL 500.3109(1), which, as quoted earlier, provides that "[b]enefits provided *or required to be provided* under the laws of any state *or the federal government* shall be subtracted from . . . benefits otherwise payable for the injury under this chapter." (Emphasis added.) In general, Medicare healthcare benefits constitute benefits provided under the laws of the federal government. See 42 USC 1395 *et seq.* And Canty has Medicare coverage. Apparently, no Medicare benefits have been provided to or on behalf of Canty in relation to medical expenses incurred as a result of the accident. Therefore, the question becomes whether Medicare benefits would have been *required to be provided* to him or his providers had any of the pertinent medical bills been submitted to Medicare for payment. And to that extent, Mason is entitled to a setoff under MCL 500.3109(1) for purposes of any damage calculation on a finding of liability. We would also reach that same conclusion solely under common-law mitigation principles because the failure to seek payment from Medicare would not have been reasonable as a matter of law if the medical provider accepted Medicare.[9]

### III. CONCLUSION

We conclude (1) that any damages recoverable by Canty under MCL 500.3135(3)(c) must constitute "allowable expenses" under MCL 500.3107 to MCL 500.3110, (2) that the fee schedules in MCL 500.3157 apply to Canty's action, (3) that common-law, mitigation-of-damages principles are also applicable, (4) that under either MCL 500.3109(1) or common-law mitigation principles, Mason is entitled to a setoff for medical expenses that would have been covered by Medicare, and (5) that, if necessary, the trier of fact must resolve whether any incurred expenses for services rendered by providers who did not accept Medicare were reasonably incurred for purposes of mitigating damages. With these guideposts in place, Mason is free to renew his motion for summary disposition should he be so inclined.

We affirm in part and reverse and remand in part for further proceedings consistent with this opinion. We do not retain jurisdiction. We decline to tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Brock A. Swartzle

---

[9] We wish to make clear that if Canty received pertinent medical services and treatment from a provider who did not accept Medicare, those expenses might still be recoverable. In that situation, the issue to be resolved by the trier of fact in relation to mitigation would concern whether it was reasonable under all of the surrounding circumstances for Canty to see a provider who did not accept Medicare.

-8-